**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FIFTH THIRD BANK, NATIONAL ASSOCIATION, )<br>)<br>Defendant. ) | No. 20-cv-01683<br><br>Judge Andrea R. Wood |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bureau of Consumer Financial Protection ("CFPB") has brought the present action against Defendant Fifth Third Bank, National Association ("Fifth Third"), alleging violations of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5481–5603,[1] the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Truth in Savings Act, 12 U.S.C. § 4301 *et seq.* Fifth Third now moves to transfer venue pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 20.) For the following reasons, Fifth Third's motion is granted.

**BACKGROUND**

The CFPB alleges that, from 2010 through 2016, Fifth Third violated §§ 5531 and 5536(a)(1) of the CFPA; the Truth in Lending Act and its implementing regulation, Regulation Z, 12 C.F.R. § 1026.12; and the Truth in Savings Act and its implementing regulation, Regulation DD, 12 C.F.R. § 1030.4. (Compl. ¶ 8. Dkt. No. 1.) According to the CFPB's complaint, the violations began with Fifth Third's implementation of a "cross-sell" strategy, which is a tactic used to sell more products and services to existing customers. (*Id.* ¶ 2.) This strategy, coupled

---

[1] The CFPA was part of Title X of the Dodd-Frank Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376.

with ambitious sales goals and an incentive-compensation program, allegedly incentivized employees to open unauthorized products and services in customers' names. (*Id.* ¶¶ 3–5.) The CFPB claims that, despite knowing about this misconduct, Fifth Third failed to monitor its program, detect and stop wrongdoing, and remediate harmed consumers. (*Id.* ¶ 5.)

The CFPB is a federal government agency created by the CFPA. The CFPB's headquarters is located in Washington, D.C., and it currently has three regional offices, including one in Chicago. (Opp'n at 8, Dkt. No. 39.) Fifth Third is a nationally chartered bank with its headquarters in Cincinnati, Ohio and branches in ten states, including Illinois. (Def.'s Mot. to Transfer Venue at 4, Dkt. No. 20.) Fifth Third's senior management is based out of its Cincinnati headquarters, which is also where the bank makes corporate decisions and handles customer complaints. (*Id.* at 3–4.)

## DISCUSSION

Fifth Third seeks to transfer venue to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 20.) Section 1404(a) provides that, even when venue is appropriate in the district where a case is currently pending, "a district court may transfer any civil action to any other district or division where it might have been brought," if certain factors weigh in favor of doing so. 28 U.S.C. § 1404(a). "[T]he three factors specifically mentioned in § 1404(a) [are] the convenience of the parties, the convenience of the witnesses, and the interest of justice . . . ." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 218 n.3 (7th Cir. 1986). The party seeking transfer has "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Id.* at 219–20. "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219; *see also Van Dusen v. Barrack*, 376 U.S. 612, 622

(1964) (noting that the § 1404(a) analysis requires an "individualized, case-by-case consideration of convenience and fairness"). The parties agree that venue would be proper in both this District and the Southern District of Ohio. Accordingly, this Court need only address the convenience of the parties and witnesses and the interest of justice.

## I. Convenience of the Parties and Witnesses

Courts look to five factors in evaluating the convenience of parties and witnesses: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Law Bull. Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998).

### A. Plaintiff's Choice of Forum

Deference should generally be given to the plaintiff's choice of forum. *Nalco Co. v. Envtl. Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010). However, "[t]he amount of deference courts give to the plaintiff's choice of forum lessens where the plaintiff's choice is not [its] home forum or bears little connection to the litigation." *Poole v. Saddler*, No. 13-cv-4984, 2014 WL 585306, at *6 (N.D. Ill. Feb. 14, 2014) (collecting cases).

It is well settled that federal agencies reside in Washington, D.C. *See Reuben H. Donnelley Corp. v. FTC,* 580 F.2d 264, 267 (7th Cir. 1978). For venue purposes, a regional office in Chicago is not enough. *See New York v. Pruitt*, Nos. 18-CV-1030 (JPO), 18-CV-1048 (JPO), 2018 WL 2411595, at *3 (S.D.N.Y. May 29, 2018). Furthermore, as discussed below, Illinois is less connected than Ohio to the current litigation. Consequently, the CFPB's choice of forum is entitled to less deference that might otherwise be the case.

### B. Situs of Material Events

"[T]he location of material events for purposes of venue is the location where the defendant's decisions and activities that gave rise to the claim took place." *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04 C 2728, 2004 WL 1921059, at *3 (N.D. Ill. July 21, 2004). Where a corporate defendant's conduct is at issue, courts often look to where the underlying business decisions were made. *See, e.g.*, *Preston v. Am. Honda Motor Co.*, No. 17 C 3549, 2017 WL 5001447, at *3 (N.D. Ill. Nov. 2, 2017); *U.S. ex rel. Heathcote Holdings Corp. v. Maybelline LLC*, No. 10 C 2544, 2011 WL 941350, at *6 (N.D. Ill. Mar. 15, 2011); *Tissue Extraction Devices, LLC v. Suros Surgical Sys., Inc.*, No. 08 C 140, 2008 WL 4717158, at *4 (N.D. Ill. May 20, 2008).

This factor favors transfer to the Southern District of Ohio. The CFPB's complaint focuses on Fifth Third's corporate decisions and incentive structure, which came from its headquarters in Cincinnati. Cincinnati is also where the bank conducts internal investigations into misconduct and handles customer complaints. *See CFPB v. CashCall, Inc*., No. 13-13167-GAO, 2015 WL 5610813, at *1 (D. Mass. Sept. 23, 2015) (granting transfer because "[t]he allegedly illegal activity at the heart of this case was apparently managed from within the Central District of California, where the individual defendant resides and the entity defendants perform most of their business"); *FTC v. Am. Tax Relief LLC*, No. 10 C 6123, 2011 WL 2893059, at *5 (N.D. Ill. July 20, 2011) (granting transfer to the Central District of California, where "all of the [defendant's] corporate decisions regarding sales and advertising occurred").

The CFPB insists that the Chicago region is a "hotbed" of Fifth Third's alleged misconduct. To support this claim, it references a chart demonstrating cases of "gaming," which is defined as "the manipulation or concealment of accounts or activities with intent to deceive either

4

customer or bank for personal gain." (Opp'n at 5 (internal quotation marks omitted); *see also* Opp'n, Ex. 4 at 3–4, Dkt. No. 39-5.) An example of gaming would be if an employee opened an unauthorized account. (Opp'n at 5.) The chart, formatted as a bar graph, has a set of three bars for each of Fifth Third's geographical regions. The bars represent "Total Gaming Cases" for "2014," "2015," and "Thru August 2016." Beneath each set of bars is a four-letter label identifying to which region they correspond. In interpreting this chart, the CFPB only looks at the data of two regions: "FTCH" (Chicago) and "FTCI" (Cincinnati). Since Chicago had more gaming cases than Cincinnati, the CFPB uses the graph to argue that most of Fifth Third's misconduct occurred in this District. As Fifth Third indicates, however, the FTCH data includes gaming in both Chicago and Northern Indiana. (Def.'s Reply at 6–7, Dkt. No. 41.) Of course, the Northern Indiana cases occurred not in the Northern District of Illinois but in the Northern District of Indiana. Moreover, Cincinnati is not the only region on the graph located within the Southern District of Ohio. When taking into consideration data from "FTCO" (Columbus), "WSUN" (Ohio Valley), and "MCNB" (Dayton), the better reading of the graph actually favors transfer to the Southern District of Ohio.

      The CFPB also points to the number of unauthorized accounts that were opened in each state. Fifth Third acknowledges that, between 2010 and 2016, there were a total of "fewer than 1,100" unauthorized accounts opened. (Def.'s Mot. to Transfer Venue at 6.) The CFPB states that 257 unauthorized accounts were opened in Illinois and 183 were opened in Ohio. (Opp'n at 6.) In this respect, this case is similar to *CFPB v. Golden Valley Lending, Inc.*, No. 17 C 3155, 2017 WL 3970514 (N.D. Ill. Sept. 8, 2017). Although the CFPB alleged "thousands of potential victims in Illinois," the court transferred the case, finding that "Defendants' borrowers also reside in 16 other states besides Illinois, meaning that these states are also part of the 'situs of material events.'" *Id*. at *2. Here, less than one quarter of the detected unauthorized accounts were opened

5

in Illinois. Likewise, more than half of the total accounts were created outside of Ohio and Illinois. This means that up to eight other states would be part of the situs of material events as well. "In other words, there is nothing special about Illinois for this case." *Id.*

### C. Relative Ease of Access to Sources of Proof

This factor is neutral—the parties agree that electronic documents can be transported easily. "[I]n an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *Campbell v. Campbell*, 262 F. Supp. 3d 701, 710 (N.D. Ill. 2017) (internal quotation marks omitted).

### D. Convenience of the Witnesses

"The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). In evaluating this factor, "the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Law Bull. Publ'g Co.*, 992 F. Supp. at 1018. Generally, the convenience of party witnesses is given less weight than that of nonparty witnesses. *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013). However, "party witnesses are still relevant." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 434 (E.D.N.Y. 2012); *see also First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006) ("Party witnesses are certainly given some weight.").

Fifth Third argues that witnesses with relevant information are more likely to be in Ohio, as the complaint is directed at the bank's policies and monitoring efforts, which are directed by senior officers in Cincinnati. The CFPB states that these senior officers are party witnesses, and Fifth Third has not shown that they are essential or exclusively available in Ohio. Though the convenience of party witnesses is given less weight, it is highly likely that the bank's senior

officers will be essential to the litigation—the complaint is heavily anchored in Fifth Third's corporate policies and incentive structure, as well as the bank's alleged awareness of misconduct. The testimony of Fifth Third employees in Ohio likely would be central to these issues. When the testimony of senior management will likely be an important part of litigation, courts often find it appropriate to transfer the case to the district where those officers are located. *See CashCall, Inc*., 2015 WL 5610813, at *1 (granting transfer to the Central District of California, where "the majority of the employees of the entity defendants, likely the most important witnesses for the issues of this case, live and work"); *FTC v. Acquinity Interactive, LLC*, No. 13 C 5380, 2014 WL 37808, at *4 (N.D. Ill. Jan. 6, 2014) (granting transfer, as "it stands to reason that because [the defendant] conducted the challenged operations in South Florida, numerous witnesses with relevant knowledge are likely to be located there"); *Gomez v. Wells Fargo Bank*, *NA*, No. CV-09-00181-PHX-GMS, 2009 WL 1936790, at *2–3 (D. Ariz. July 2, 2009) (granting transfer to the District of Minnesota because the defendant's "executive management and administrative employees, who are likely to be extensively engaged in this litigation" were all located at its corporate headquarters in Minnesota).

The CFPB claims that, since the Northern District of Illinois is the location of more implicated bank branches (Reiferson Decl. ¶¶ 12(c)-(d), Dkt. No. 39-1), there should be more valuable witnesses here. It specifically references a former employee who authored a letter to management about predatory sales practices (Opp'n at 4; Opp'n, Ex. 1, Dkt. No. 39-2), and who is believed to reside within the Northern District's subpoena power, and a former regional manager (and her manager) who still works in the Chicago area. (Opp'n at 10; Reiferson Decl. ¶¶ 18–19.) But even if the convenience of Fifth Third's former employees is given the same weight as the convenience of nonparty witnesses, this factor still favors transfer. Both districts are

likely home to former employees and potential victims with relevant information, as the CFPB's allegations are not limited to Chicago. Only Ohio, however, is home to Fifth Third's senior management, whose testimony will be central to the questions at issue here.

### E. Convenience to the Parties of Litigating in the Respective Forums

When looking at this factor, "the court should consider [the parties'] respective residences and their ability to bear the expenses of litigating in a particular forum." *Law Bull. Publ'g Co*, 992 F. Supp. at 1019. "[T]he moving party . . . has the burden of showing that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Marshall v. Wexford Health Sources, Inc.*, No. 13 C 8678, 2014 WL 2536246, at *3 (N.D. Ill. June 5, 2014) (internal quotation marks omitted). But generally, the convenience of counsel is not a factor to be considered. *Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *see also Household Reinsurance Co. v. Travelers Ins. Co.*, No. 91 C 1308, 1991 WL 119121, at *2 (N.D. Ill. June 28, 1991) ("While certain cases . . . have factored in convenience of counsel, most courts have refused to do so." (citations omitted)).

The CFPB states that it would incur large expenses litigating in Ohio, as it does not have an office or equipment there. It is true that "[w]hen government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the federal government and who is no less worthy of the protection of the law than corporate officers, shareholders, and employees." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). However, the location of a federal agency's regional office is not dispositive. *See FTC v. Fortune Hi-Tech Mktg., Inc.*, No. 13-cv-578, 2013 WL 1858598, at *4 (N.D. Ill. May 1, 2013) ("The FTC attorneys handling the matter are based in the FTC's Chicago office, and there is no FTC office in Kentucky; however, the FTC is a federal agency and litigates nationwide."); *FTC v.*

8

*Golden Empire Mortg., Inc.*, No. CV 09-3227 CAS (SHX), 2009 WL 10674463, at *2 (C.D. Cal. Sept. 21, 2009) ("It would be somewhat more convenient for plaintiff to proceed in the Central District, given plaintiff's regional office and attorney based in Los Angeles. Overall, however, the convenience of the parties factor favors transfer."); *SEC v. Ernst & Young*, 775 F. Supp. 411, 415 (D.D.C. 1991) (finding that this factor does not weigh against transfer, as "[t]he SEC regularly investigates and tries cases all over the country").

With nationwide jurisdiction, yet regional offices in only four states, the CFPB's likelihood of trying cases out-of-state is high. Moreover, the inconvenience of litigating in the Southern District of Ohio has not prevented the CFPB from filing there previously. *See CFPB v. Sec. Nat'l Auto. Acceptance Co.*, No. 1:15-cv-401 (S.D. Ohio filed June 17, 2015).[2] Nonetheless, this Court affords some weight to the location of the CFPB's regional office, and thus this factor favors the Northern District of Illinois, but only slightly.

## II.     Interest of Justice

The Court evaluates the interest of justice "by looking at docket congestion, speed to trial, familiarity with the law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *Luera v. Godinez*, No. 13-cv-02041, 2015 WL 1538613, at *5 (N.D. Ill. Mar. 30, 2015).

### A.     Familiarity with the Law

This factor is neutral. Since this action is brought under federal law, "a judge in a particular district has no inherent advantage over [a] judge in other districts." *SEC v. Kasirer*, No. 04 C 4340, 2005 WL 645246, at *3 (N.D. Ill. Mar. 21, 2005); *see also Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1055 (N.D. Ill. 2012) ("In such situations, most courts have frowned on the

---

[2] Courts routinely take judicial notice of filings in other courts. *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016).

9

suggestion that the judges of one district are more capable or experienced in a particular area than are judges of another district.").

### B. Docket Congestion and Speed to Trial

"To evaluate the speed at which a case will proceed, courts look to two statistics: (1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, No. 14 C 1905, 2015 WL 738694, at *5 (N.D. Ill. Feb. 19, 2015) (internal quotation marks omitted). The Court here looks to the statistics from March 2020. *See United States District Courts—National Judicial Caseload Profile*, U.S. Courts (Mar. 31, 2020), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf. In the Northern District of Illinois, cases took 9.8 months from filing to disposition and 39 months from filing to trial; those numbers in the Southern District of Ohio were 10 and 34.2 months, respectively. "Where the two statistical measures point in different directions, some courts have held that they cancel one another out." *Campbell*, 262 F. Supp. 3d at 712. Since cases often do not proceed to trial, however, other courts "have held that the time to disposition is the more important metric." *Id*. The time to disposition figures are almost identical here, and the time to trial discrepancy is not significant. *See Lewis*, 841 F. Supp. 2d at 1056 (finding that a 5.4 month discrepancy in time to trial is not "significantly different"). Ultimately, this factor is neutral.

### C. Relationship of the Community to the Controversy and the Desirability of Resolving the Controversy in Each Locale

"Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Am. Tax Relief LLC*, 2011 WL 2893059, at *8 (citation omitted). Though "[a] court has an interest in resolving issues affecting residents of its district and state," a court in a different state may

"have a stronger interest in resolving the underlying dispute that affects its companies and citizens who are named as defendants." *Acquinity Interactive*, 2014 WL 37808, at *5.

This factor favors transfer. The CFPB's complaint alleges misconduct occurring between 2010 and 2016, when Fifth Third was an Ohio state-chartered bank. While Illinois has an interest in protecting its residents from illegal activity, this interest would not be greater than that of any other state in which misconduct might have occurred. *See Lewis*, 841 F. Supp. 2d at 1056 (finding that, in the context of a patent infringement case, "the Northern District of Illinois's interest is entitled to diminished weight, as it is an interest common to the many districts in which [the defendant] sells its products.").

### III. Overall Balance

In sum, the Court finds that the Southern District of Ohio would be a more convenient forum. While transfer to the Southern District of Ohio would be somewhat less convenient for the CFPB, the material events of this case took place there, the Southern District of Ohio is more convenient for witnesses, and the Southern District of Ohio has an inherent interest in resolving the main controversy. *See Golden Valley Lending*, 2017 WL 3970514 (granting transfer of venue to Kansas even though the CFPB had a regional office in Illinois and there were alleged victims in Illinois); *Acquinity Interactive*, 2014 WL 37808 (granting transfer even though the FTC had a regional office in Illinois, as the convenience of witnesses and the desirability of resolving the controversy in each district favored transfer); *FTC v. Graco Inc.*, No. 11-cv-02239 (RLW), 2012 WL 3584683 (D.D.C. Jan. 26, 2012) (granting transfer where most factors were neutral, but the situs of material events, ease of access to proof, and local interest were in favor of transfer). The Court therefore finds that, on balance, the § 1404(a) factors weigh in favor of transfer.

## CONCLUSION

For the foregoing reasons, Fifth Third's motion to transfer venue (Dkt. No. 20) is granted. This action is transferred to the Southern District of Ohio.

ENTERED:

Dated:  February 12, 2021

Andrea R. Wood
United States District Judge