**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BUREAU OF CONSUMER FINANCIAL PROTECTION,

Plaintiff,

v.

FIFTH THIRD BANK, NATIONAL ASSOCIATION,

Defendant.

Civil Case No. 1:21-cv-00262-DRC
Related Case No. 1:21-cv-00173-DRC

Judge Douglas R. Cole

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT**
**FIFTH THIRD BANK'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I. THE BUREAU CITES NO AUTHORITY ALLOWING IT TO PURSUE PRE-TRANSFER DATE CONDUCT. ....3

II. THE CREDIT CARD CLAIMS MUST BE NARROWED BECAUSE OF THE STATUTE OF LIMITATIONS. ....5

A. The Court May Consider Attachments to the Amended Answer. ....5

B. The Court Can and Should Rule on the Statute of Limitations Issue at the Pleadings Stage. ....8

C. Knowledge of Unauthorized Accounts by the Bureau's Supervisory Staff Triggers the Statute of Limitations. ....10

D. Equitable Tolling Is Unavailable. ....12

E. The Bureau's Claims are Untimely Regardless of Which Statute of Limitation Applies. ....13

III. THE CFPB HAS NOT PLED A COGNIZABLE INJURY SUPPORTING COUNTS 4–7 AS REQUIRED BY STATUTE. ....13

IV. THE CATCH-ALL CLAIMS ARE IMPROPER, VAGUE, AND DUPLICATIVE. ....17

CONCLUSION ....20

# TABLE OF AUTHORITIES

## CASES

*Ashdown v. Buchanan*, 2021 WL 2643111 (S.D. Ohio June 28, 2021) ....................................12

*BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 2012 WL 3283397 (S.D. Ohio Aug. 10, 2012) ....................................18

*Barnard v. Lackawanna Cty.*, 194 F. Supp. 3d 337 (M.D. Pa. 2016)....................................6

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943 (W.D. Mich. 2003)....................................8

*Buchholz v. Meyer Njus Tanick*, 946 F.3d 855 (6th Cir. 2020) ....................................14, 15

*CFPB. v. TCF Nat'l Bank*, 2017 WL 6211033 (D. Minn. Sept. 8, 2017) ....................................1, 4, 8

*CFPB v. Weltman, Weinberg & Reis Co.*, 2017 WL 4348916 (N.D. Ohio Sept. 28, 2017)..8, 9, 13

*Day v. DeLong*, 2017 WL 5903761 (S.D. Ohio Nov. 30, 2017) ....................................7

*Dundee v. Univ. Hosps. Corp*, 2019 WL 7195317 (N.D. Ohio Dec. 3, 2019) ....................................5

*EEOC v. Crothall Servs. Grp., Inc.*, 2016 WL 3519710 (E.D. Pa. 2016) ....................................17

*Fox v. Cty. of Saginaw*, 2021 WL 120855 (E.D. Mich. Jan. 13, 2021) ....................................18

*FTC v. Amazon.com, Inc.*, 2016 WL 10654030 (W.D. Wash. 2016) ....................................15

*FTC v. Kennedy*, 574 F. Supp. 2d 714 (S.D. Tex. 2008) ....................................15

*Geiling v. Wirt Fin. Servs., Inc.*, 2014 WL 8473822 (E.D. Mich. Dec. 31, 2014) ....................................20

*Gordon v. B. Braun Med. Inc.*, 2020 WL 1491378 (S.D. Ohio Mar. 27, 2020) ....................................18

*Hollis v. Erdos,* 480 F. Supp. 3d 823 (S.D. Ohio 2020) ....................................6, 7

*Hy Cite Corp. v. Regal Ware, Inc.*, 2011 WL 1206768 (W.D. Wis. Mar. 15, 2011) ....................................17

*Krottner v. Starbucks Corp.*, 406 F. App'x 129 (9th Cir. 2010)....................................15

*Manigault v. Ohio Dep't of Rehab. & Corr.*, 2014 U.S. Dist. LEXIS 132033 (N.D. Ohio Sept. 19, 2014) ....................................7, 8

*Moss v. Martin*, 2005 WL 4717594 (C.D. Ill. May 16, 2005)....................................6

*Ohio Nat'l Life Ins. Co. v. Cetera Advisor Networks, LLC*, 2021 WL 2819838 (S.D. Ohio July 7, 2021 ....................................7

*Pac. Space Design Corp. v. PNC Equip. Fin., LLC*, No. 1:13-CV-00460, 2014 WL 6603288 (S.D. Ohio Nov. 19, 2014) ........ 8

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) ........ 15

*Pope v. Kroger Co.*, 2020 U.S. Dist. LEXIS 108231 (S.D. Ohio June 19, 2020) ........ 16

*Straythorn v. Wheth Pharms., Inc.*, 737 F.3d 378 (6th Cir. 2013) ........ 20

*Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533 (E.D. Mich. 2020) ........ 16

*United States v. Carell*, 681 F. Supp. 2d 874 (M.D. Tenn. 2009) ........ 11

*United States v. Miami Univ.*, 294 F.3d 797 (6th Cir. 2002) ........ 16

**OTHER AUTHORITIES**

12 U.S.C. § 5531(c) ........ 14

12 U.S.C. § 5531(d) ........ 14

12 U.S.C. § 5564(g)(1) ........ 11

31 U.S.C. § 3731(b)(2) ........ 10

Fed. R. Civ. P. 7(a) ........ 5

Fed. R. Civ. P. 12(d) ........ 8

The Bureau tacitly concedes that the law supports Fifth Third on the Transfer Date and statute of limitations issues. Yet it urges this Court to kick the can down the road—a monumental waste of party and judicial resources. There is no reason to refrain from reaching the merits of Fifth Third's arguments, and every reason to do so. Ruling now will ensure that discovery focuses on matters that fall within the Bureau's enforcement authority and does not stray into areas barred by Congress or for which the Bureau cannot satisfy statutory and constitutional injury requirements.

As discussed in Section I, the CFPA transferred enforcement authority to the Bureau on July 21, 2011. Rather than defend its assertion of enforcement authority over conduct alleged to have occurred as early as 2008, the Bureau ducks the issue by noting that many of the at-issue statutes (such as TILA and FCRA) preexisted the Transfer Date. But that has nothing to do with the *Bureau's* ability to sue for conduct that occurred before it was vested with enforcement authority. The Bureau also contends that the Court should not decide the Transfer Date question on a Rule 12 motion because "no claim could be foreclosed entirely" and because "Fifth Third again fails to establish the number of violations that allegedly preceded the Transfer Date." Opp. to Def's Mot. for J. on the Pleadings (Dkt. 88) ("Opp.") at 11. The Bureau's novel "claims foreclosure" doctrine has no basis in law. Indeed, as Fifth Third's opening brief made clear, another court has decided this same question on a Rule 12 motion. *See CFPB. v. TCF Nat'l Bank*, 2017 WL 6211033, at *3 (D. Minn. Sept. 8, 2017) ("[T]he Bureau cannot assert claims under the statute arising before July 21, 2011, the CFPA's effective date."). It is inappropriate and inefficient for the Bureau to take expensive discovery into pre-July 21, 2011 conduct only to have all its claims inevitably narrowed at summary judgment.

Regarding the statute of limitations for its credit card-related claims (Counts 3, 8, 10, and 13), the Bureau does not challenge the authenticity or significance of the document it delivered to Fifth Third on June 3, 2015. *See* Dkt. 82-1 ("Exhibit 1"). Instead, the Bureau attacks the procedural propriety of Fifth Third's motion and suggests that the Bureau's discovery of unauthorized accounts cannot be imputed to its enforcement division. As discussed in Section II.A, there is good reason why both the Federal Rules of Civil Procedure and case law permit consideration of matters attached to pleadings as long as they are authentic, central to the issues, and do not contradict allegations in the complaint: it makes no sense for courts to ignore authentic, relevant evidence, only to revisit the issue on summary judgment after a pointless and wasteful expenditure of party and judicial resources. And there is no basis to cabin the CFPB's knowledge to one division (Supervision) rather than another (Enforcement) when they are part of the same agency.

Regarding its Early Access, online banking, and overdraft protection claims (Counts 4–7), addressed in Section III, the Bureau—whose mission is to protect consumers—astonishingly asserts that it need not allege actual injury to consumers from alleged unauthorized enrollment in these products and services. The Bureau is wrong that it is somehow exempt from Article III's standing requirements, but in any event, the CFPA independently requires actual harm to consumers. The Bureau does not address the fundamental flaw in its complaint: its allegations that free enrollment in these services posed an "increased risk" of harm are insufficient to state a claim for unfairness or abusiveness.

Lastly, Counts 1, 11, and 12 are improper, vague, and duplicative and should be dismissed (Section IV). Count 12 is particularly problematic because it presupposes a violation and then seeks to impose liability on a failure to remediate. Enforcement actions must be based

on statutory or regulatory violations, not a failure to meet some unspecified agency expectation. This count amounts to impermissible regulation by enforcement, where an institution is faulted for failing to comply not with laws or regulations but with unspecified "reasonable measures."

The Court should act now to pare back the Bureau's Amended Complaint. Five years after it launched an immensely costly and burdensome investigation, the Bureau has not identified anything of substance beyond a small number of accounts that Fifth Third self-identified, investigated, and corrected. Now, the Bureau wants to reach beyond the limitations period and its statutory authority, to push new regulatory theories never before accepted by any court. This Court should reject that overreach. The Transfer Date establishes a boundary that the Bureau cannot cross. The Bureau's discovery of alleged unauthorized accounts cannot be cabined to its enforcement division. CFPA claims for abusiveness and unfairness require an actual injury. And enforcement actions must be based on statutory or regulatory violations, not a failure to meet some unspecified regulatory expectation.

## I. THE BUREAU CITES NO AUTHORITY ALLOWING IT TO PURSUE PRE-TRANSFER DATE CONDUCT.

The Transfer Date requires all claims to be narrowed at least to post-July 21, 2011 conduct. The Bureau admits that its enforcement authority did not vest before July 21, 2011, Opp. at 11, yet the Amended Complaint alleges wrongdoing dating back to 2008, Amended Complaint (Dkt. 73) ("Compl.") ¶¶ 43–44, 210. Nowhere does the Bureau explain why it has enforcement authority for violations of *any* statute that occurred before the Transfer Date. The Bureau instead spends its Opposition attempting to erect procedural barriers to judgment on the pleadings.

The Bureau first invokes a novel "claims foreclosure" doctrine to contend that the Court should not decide this question of law because granting judgment for Fifth Third on this issue

would not dispose of any claim entirely. Opp. at 11. This is legally incorrect: as discussed in more detail below in Section II.B, courts can and commonly do dismiss portions of claims at the Rule 12(b)(6) stage. Any contrary rule would needlessly waste party and judicial resources on discovery related to violations that the Bureau cannot pursue as a matter of law.

*TCF*, cited in Fifth Third's opening brief, is exactly on point. There, the Bureau alleged that TCF had misled consumers since 2009 to opt-in to overdraft coverage for ATM and debit card transactions. TCF moved to dismiss. The court rejected the Bureau's argument that it could reach back to pre-Transfer Date violations simply because it also alleged post-Transfer Date violations:

> [T]he Court agrees that the Bureau cannot assert claims under the statute arising before July 21, 2011, the CFPA's effective date. The Bureau attempts to salvage earlier claims under a type of continuing-violation theory, arguing it has "alleged conduct violating the CFPA that post-dates its effective date." But accepting the Bureau's argument theoretically could render unlawful every account opening ever conducted by TCF, since some of them occurred after the CFPA's effective date. That is clearly not the law.

*TCF Nat'l Bank*, 2017 WL 6211033, at *3 (internal citation omitted). The court thus excluded pre-Transfer Date violations at the motion-to-dismiss stage even though all of the claims survived the motion to dismiss *in part*.

Next, the Bureau pretends that Fifth Third argues "that TILA, TISA, and FCRA were not effective against Fifth Third until the Bureau gained authority to enforce them." Opp. at 11. But, with one exception,[1] Fifth Third did not argue that it lacked notice of or was not subject to those consumer protection statutes before July 21, 2011. Rather, the Bank's straightforward argument is that principles of statutory construction prevent the *CFPB* from enforcing *any* laws

[1] Fifth Third's only retroactivity argument concerns the abusiveness claims, and because the Bureau did not even try to rebut it in its Opposition, it is conceded. *See* Mem. in Support of Defs' Mot. for J. on the Pleadings (Dkt. 86-1) ("Mem.") at 9–10.

before the date on which its enforcement authority vested. *See* Mem. at 8–9. This conclusion—which the Bureau never contests—unambiguously flows from Congress' clear direction for the Bureau's powers to have a finite temporal limit, regardless of whether the laws sought to be enforced existed before. The Court should dismiss all claims insofar as they rest on pre-Transfer Date conduct.

## II. THE CREDIT CARD CLAIMS MUST BE NARROWED BECAUSE OF THE STATUTE OF LIMITATIONS.

The Bureau concedes that its credit card claims are timely only if it lacked notice of them as of October 7, 2015. *See* Opp. at 2. Indisputably authentic evidence attached to Fifth Third's Amended Answer establishes that the Bureau had notice of its claims in June 2015. The pre-October 2015 credit card claims—Counts 3, 8, 10, and 13—are therefore time-barred. *See* Mem. at 5–7.

### A. The Court May Consider Attachments to the Amended Answer.

The Bureau does not dispute the authenticity or import of the attachments to Fifth Third's Amended Answer. It argues only that the Court cannot consider attachments to an answer for a Rule 12(c) motion. That is not the law.

As explained in Fifth Third's opening brief, an answer counts as a "pleading." *See* Mem. at 4; Fed. R. Civ. P. 7(a). Courts may consider attachments to the pleadings when deciding Rule 12(c) motions—indeed, Rule 10(c) recognizes that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Notably, the Bureau concedes that the Court may consider the parties' tolling agreements attached to the Answer. Opp. at 2 n.1.

Courts have construed Rule 10(c) broadly to permit consideration of documents attached to an answer but not referenced in or attached to the complaint. *See, e.g.*, *Dundee v. Univ.*

*Hosps. Corp*, 2019 WL 7195317 (N.D. Ohio Dec. 3, 2019), *report and recommendation adopted*, 2019 WL 7194657 (N.D. Ohio Dec. 26, 2019) (considering letter from EEOC); *Barnard v. Lackawanna Cty.*, 194 F. Supp. 3d 337 (M.D. Pa. 2016) (considering letters, paystub, and collective bargaining agreement); *Moss v. Martin*, 2005 WL 4717594, at *1 (C.D. Ill. May 16, 2005) (considering position description). *Barnard* is particularly instructive, as the complaint had no attachments, but the county attached five exhibits to its answer, only one of which was referenced in the complaint, and moved for judgment on the pleadings. The court granted the motion after discussing why each exhibit was properly considered. They consisted of (1) a collective bargaining agreement, (2) a letter from the county to the plaintiff notifying her of a due process hearing, (3) a second letter notifying plaintiff of her suspension, (4) a grievance form submitted by the plaintiff, and (5) a pay stub. The Court found that each exhibit was a "written instrument" under Rule 10(c) because they defined the parties' rights, duties, or liabilities. *See Barnard*, 194 F. Supp. 3d at 340–41. So, too, with Exhibit 1, [redacted] It therefore defined Fifth Third's duties and liabilities such that Fifth Third had to, and did, act on it.

Contrary to the Bureau's argument, this Court's decision in *Hollis v. Erdos*, 480 F. Supp. 3d 823 (S.D. Ohio 2020) (Cole, J.), does not hold that judgment based on the statute of limitations can never be based on attachments to a pleading. Neither the complaint nor answer in *Hollis* had any attachments. *Id.* at 826–27. Therefore, the Court's observation that a statute of limitations defense may be entertained at the Rule 12 stage "if it is apparent on the face of the complaint" cannot be taken to mean that had exhibits been attached, the Court would have

ignored them. *Id.* at 829; Opp. at 2. In addition, the Court explained that the specific circumstances warranted denial of judgment on the pleadings because the complaint was at most untimely by three days, and it was "plausible—indeed, exceedingly likely" that there were at least three days of tolling due to plaintiffs' participation in the required administrative exhaustion process. *Hollis*, 480 F. Supp. 3d at 832. Here, by contrast, the complaint was untimely by months, and the Bureau has not alleged any plausible means of extending the limitations period.

The Bureau also misinterprets this Court's decision in *Ohio Nat'l Life Ins. Co. v. Cetera Advisor Networks, LLC*, 2021 WL 2819838, at *2 (S.D. Ohio July 7, 2021) (Cole, J.). That opinion does not state or imply that "consideration of a defendant's own allegations and exhibits is appropriate only where it is a non-movant." Opp. at 3. *Ohio Nat'l* involved competing Rule 12(c) motions, and the Court merely applied the well settled proposition that in reviewing each motion, a court must construe the non-movant's pleading in the light most favorable to the non-movant—it did not hold that entire pleadings must be ignored. *See* 2021 WL 2819838, at *2.

The Bureau's other cases—*Day* and *Manigault*—likewise are distinguishable. In both, the defendants relied on documents authored by themselves and third parties that directly contradicted the allegations in the complaint or whose authenticity was disputed. *See Day v. DeLong*, 2017 WL 5903761, at *1 (S.D. Ohio Nov. 30, 2017) (written report attached to answer "tells a story at odds with [plaintiff's] allegations"); *id.* at *7 ("Defendants essentially ask the Court to accept as true the version of the events they describe in their written reports and the EMT form."); *Manigault v. Ohio Dep't of Rehab. & Corr.*, 2014 U.S. Dist. LEXIS 132033, at *5 (N.D. Ohio Sept. 19, 2014) ("Plaintiff argues that Defendants' exhibits are not authenticated and so the Court should not consider the attached exhibits."). Exhibit 1 does not contradict the Amended Complaint, and the Bureau does not—and cannot—argue that it is inauthentic.

Further, when an attachment is central to the complaint and its authenticity is not disputed, it may be considered. *See Pac. Space Design Corp. v. PNC Equip. Fin., LLC*, No. 1:13-CV-00460, 2014 WL 6603288, at *2 (S.D. Ohio Nov. 19, 2014) ("documents attached to the defendant's answer" may be considered "when they are integral to the claims and the authenticity of the documents is not disputed"). By conceding that the tolling agreements may be considered at this stage, the Bureau implicitly concedes that the statute of limitations is central to this case. *See* Opp. at 2 n.1. It follows that Exhibit 1, which goes as much to the statute of limitations as the tolling agreements, is also central.[2]

**B. The Court Can and Should Rule on the Statute of Limitations Issue at the Pleadings Stage.**

Instead of engaging on the merits, the Bureau urges the Court to delay resolving the statute of limitations issue because it would not dispose of the credit card claims entirely. *See* Opp. at 4. This argument is incorrect, both legally and factually.

Courts routinely grant early dispositive motions that narrow but do not dispose of entire claims. *See, e.g.*, *TCF*, 2017 WL 6211033, at *3; *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 954 (W.D. Mich. 2003) (dismissing claims "to the extent they rely upon acts occurring more than three years prior to April 25, 2002 – the date Bliss filed its complaint"). Doing so is common sense: the sooner claims can be narrowed, the less burdensome the case is for the parties and the court.

The Bureau offers two cases, *Weltman* and *Frederick J. Hanna*, in support of its argument. Both are distinguishable because in those cases, a holding that the Bureau missed the

[2] If the Court is not inclined to consider Exhibit 1 for purposes of a Rule 12(c) motion, the Court could convert this motion to a Rule 56 motion instead and decide it on that basis. *See* Fed. R. Civ. P. 12(d); *Manigault*, 2014 U.S. Dist. LEXIS 132033, at *12 (converting to summary judgment and ordering supplemental briefing within two weeks).

statute of limitations would have had no impact on discovery, and to reach that holding, the courts would have had to resolve a novel legal issue, which they were not inclined to do. Specifically, in *CFPB v. Frederick J. Hanna & Assocs.*, the CFPB alleged violations of the Fair Debt Collections Practices Act ("FDCPA") and the CFPA premised on the same conduct, and the issue was whether the FDCPA's one-year statute of limitations or the CFPA's three-year statute of limitations applied to the FDCPA count, an issue that had almost no precedent. 114 F. Supp. 3d 1342, 1375–76 (N.D. Ga. 2015). It was undisputed that the CFPA count was subject to a three-year limitations period and was timely. *See id.* at 1380. Because the underlying conduct supporting each count was identical, the Bureau still would have been entitled to the same discovery no matter how the court resolved the novel statute-of-limitations issue. *See id.*

The *Weltman* opinion addressed the same question and, relying on *Frederick J. Hanna*, reached the same conclusion. *See CFPB v. Weltman, Weinberg & Reis Co.*, 2017 WL 4348916, at *6–7 (N.D. Ohio Sept. 28, 2017) (reserving ruling on FDCPA statute of limitations because "all claims are based on the same conduct and thus support the same discovery").

Here, a ruling for Fifth Third would significantly impact discovery and the litigation. Unlike in *Frederick J. Hanna* and *Weltman*, the Bureau missed the longer CFPA statute of limitations. With some allegations dating back to 2008, *see, e.g.*, Compl. ¶ 210, narrowing the credit card claims to post-October 7, 2015 conduct would dramatically reduce the scope of discovery.[3] It would allow the parties to focus on credit card accounts that were opened after

[3] Because the CFPB knew the facts supporting its credit card claims no later than June 3, 2015, only credit card claims that fall within three years of the filing date are still timely. October 7, 2015 is the tolling-adjusted date that is three years before the Bureau filed its March 9, 2020 complaint, accounting for 520 days of tolling in the interim. Limiting the claims to post-October 7, 2015 accounts would substantially narrow the claims because unauthorized credit card account openings were concentrated in a particular region (Chicago) in the early years. *See* Compl. ¶ 45 (noting "consistent problems around unauthorized credit card sales in Chicago" in 2010).

that date, while avoiding discovery disputes over potentially eight years' worth of documents and data on credit card applications, account opening, activation, and transactions. It also would make depositions more efficient by eliminating the need to depose current and former Fifth Third employees on pre-October 2015 incentive compensation for credit cards, controls around credit card openings, and credit card accounts opened before October 7, 2015. And, it would eliminate the need for this Court to revisit this same issue on summary judgment.

The Bureau contends that this Court cannot temporally narrow its claims based on the statute of limitations because the relevant accounts have not yet been identified. *See* Opp. at 3–4. But discovery should be calibrated to focus on viable claims, not claims that are time-barred as a matter of law. If claims could not be narrowed at the pleading stage unless all the underlying facts are known, then no partial Rule 12 motion would ever be granted, and the scope of discovery and concomitant costs would soar.

### C. Knowledge of Unauthorized Accounts by the Bureau's Supervisory Staff Triggers the Statute of Limitations.

Next, the Bureau suggests that CFPB supervisory staff's knowledge of unauthorized accounts should not be imputed to the CFPB writ large. Opp. at 4 ("[I]t is not necessary to determine now whether any alleged discovery by 'examiners' of some 'number' of unauthorized credit cards outside of the limitations period would be imputed to the Bureau at large."). The Bureau offers zero support for its argument that the statute of limitations did not accrue until the CFPB's *enforcement* division discovered unauthorized credit card accounts. The Bureau cites cases arising from a totally different context: the False Claims Act ("FCA"), whose statute of limitations provides that no action may be brought "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known *by the official of the United States charged with responsibility to act in the circumstances*." 31 U.S.C.

§ 3731(b)(2) (emphasis added). The accrual of the FCA limitations period thus turns on the knowledge of a specific official. By contrast, neither the CFPA, TILA, nor FCRA contains any such provision. For example, the CFPA's statute of limitation states only that "no action may be brought under this title more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1). It does not specify that "discovery" must be made by any particular individual or division of the CFPB, and the Bureau itself concedes that the statute is silent on this issue. *See* Opp. at 4.

Even the Bureau's own cases do not support its position. *United States v. Carell*, 681 F. Supp. 2d 874, 881 (M.D. Tenn. 2009), for example, considered whether the phrase "official of the United States charged with responsibility to act" referred to the "client agencies that refer cases to the Justice Department," as the defendants argued, or "an official within the Civil Division of the Justice Department," as the government argued. The district court took a middle approach by holding that it referred to "an official within the Justice Department," not a referring agency (which was too broad) nor a particular division within the Justice Department (which was too narrow). *Id.* Here, the Bureau's argument is akin to that of the government in *Carell*—it argues that the relevant statutes of limitation are not triggered until a particular division within the CFPB (enforcement) had the requisite knowledge. *Carell* rejected that argument.

In all events, it could not possibly be the law that only discovery by the Bureau's enforcement attorneys would trigger the statute of limitations. Under that theory, no claim would ever be time-barred because the Bureau's supervisory staff could take informal discovery for as long as it wished—decades, even—without triggering the statute of limitations unless and until they finally referred the matter to the Bureau's enforcement attorneys. Exhibit 1—[redacted]

[redacted] That indisputably reflects the CFPB's knowledge and awareness of the issue.

**D. Equitable Tolling Is Unavailable.**

The Bureau tries to salvage its credit card claims by pointing to the unremarkable fact that the CFPA statute of limitations permits equitable tolling. Opp. at 5. This argument is a non-starter because (i) the Bureau does not actually allege that Fifth Third engaged in any conduct that would warrant equitable tolling (it only speculates—without a shred of factual support or citation to the Amended Complaint—that "Fifth Third might have been less than forthright during the examination," Opp. at 5); and (ii) even if Fifth Third did, the Bureau nonetheless discovered the issue at least by June 2015. Ex. 1, at 1. Simply put, the Bureau argues that a court must deny a Rule 12 motion anytime a statute of limitations hypothetically could be tolled by equitable considerations. That is not and cannot be the law.

"Equitable tolling under Ohio law is to be applied sparingly and only in exceptional circumstances." *Ashdown v. Buchanan*, 2021 WL 2643111, at *4 (S.D. Ohio June 28, 2021) (J. Graham). Nothing in the Amended Complaint establishes any basis for equitable tolling. Unsupported statements of counsel in a brief carry no weight. *See id.* at *5 ("The parties submitted no evidence on the issue of equitable tolling with their memoranda on the motion to dismiss. The statements of counsel in their memoranda are not evidence.").

Nor is the Bureau in a position to invoke this doctrine, as the Bureau itself is to blame for not bringing a timely action. The Bureau was aware of the statute of limitations because it sought and received eight tolling agreements from Fifth Third. But the first few agreements did

not run consecutively, and those gaps now doom its pre-October 7, 2015 credit card claims. Equitable tolling is unavailable to protect a government agency from its own mistakes.

### E. The Bureau's Claims are Untimely Regardless of Which Statute of Limitation Applies.

Finally, the Bureau devotes nearly five pages to whether the CFPA statute of limitations supplants the FCRA and TILA statutes of limitation. Opp. at 6–10. This argument is irrelevant because the Bureau did not just miss the shorter FCRA and TILA limitations periods, it also missed even the longer CFPA limitations period. *See* Mem. at 5–6. Thus, unlike in *Frederick J. Hanna* and *Weltman*, even if the CFPA statute of limitations applies to the Bureau's TILA and FCRA claims, at most, the Bureau could litigate its claims only as to post-October 2015 conduct.

The Bureau does not substantively engage Fifth Third's argument that FCRA establishes a five-year statute of repose that would allow, at a maximum, claims for conduct after March 9, 2015. *See* Mem. at 7. Instead, it simply asserts—without citing authority—that the CFPA trumps "any other limitations or repose period applicable to private-plaintiff suits under TILA or FCRA." Opp. at 7. Fifth Third's opening brief cited a litany of Supreme Court, Sixth Circuit, and district court cases that stand for the proposition that a statute of repose is an absolute bar and a non-waivable, substantive right, and nothing in those decisions limits their holdings to private actions. The FCRA claims must (at least) be limited to post-March 9, 2015 conduct.

## III. THE CFPB HAS NOT PLED A COGNIZABLE INJURY SUPPORTING COUNTS 4–7 AS REQUIRED BY STATUTE.

The Bureau has not alleged that anyone was injured by allegedly unauthorized enrollment in the products and services at issue in Counts 4–7. This is no surprise, as enrollment in online access to bank accounts, early access to direct deposits, and overdraft protection are free and do not affect consumer credit profiles because they are not reported to consumer reporting agencies.

The Bureau acknowledges that injury-in-fact is an element of the Bureau's substantive CFPA claims. *See* Opp. at 14 ("[T]he Bureau emphasizes that it does plead the requisite injury or likelihood of injury to consumers for the unfairness claims that require that showing under the governing statute."). In particular, the "unfairness" provision requires that an "act or practice causes or is likely to cause *substantial injury* to consumers which is not reasonably avoidable by consumers." 12 U.S.C. § 5531(c) (emphasis added). And, as explained in Fifth Third's opening brief, the injury requirement is implicit but equally well recognized in the abusiveness provision—which the Bureau also does not dispute. *See* Mem. at 12 n.5; 12 U.S.C. § 5531(d). Accordingly, to survive at the pleading stage, the Bureau must allege that these free-enrollment products and services caused concrete harm to consumers.

The Bureau cannot do so. Instead, it recites a litany of speculative injuries—everything from "increased risk" of data theft, money theft, and improper personal-data use to negative effects on consumers' "credit profiles" and consumer-reporting-agency information, and expenditure of time and effort. *See* Opp. at 14. But the Bureau never grapples with the fundamental flaw in its pleading: that alleging an "increased risk" of harm is insufficient to establish an actual injury—whether under the CFPA or Article III. *See Buchholz v. Meyer Njus Tanick*, 946 F.3d 855, 865 (6th Cir. 2020) ("[T]he Supreme Court has explained that the fear of a future harm is not an injury in fact unless the future harm is certainly impending.") (internal quotation marks and citation omitted). Despite years of investigation, the Bureau claims only that Fifth Third's alleged conduct was "likely to cause" an "increased risk" of harm. *See* Opp. at 14. None of these hypothetical harms to hypothetical people comes close to pleading a concrete injury, and especially not one that has been the subject of other CFPA cases. *See* Mem. at 13–14.

The Bureau cannot overcome this fatal flaw. Each case it cites involved an injury that was alleged to have actually occurred. For example, the Bureau cites two cases involving actual time and effort that actual consumers spent fixing issues caused by the defendants—a far cry from the conjecture that the Bureau offers here. *See FTC v. Amazon.com, Inc.*, 2016 WL 10654030, at *8 (W.D. Wash. 2016) ("The millions of dollars billed to Amazon customers without a mechanism for consent, the thousands of customers complaining about unauthorized charges, and the time spent seeking refunds for those charges, all demonstrate substantial injury."); *FTC v. Kennedy*, 574 F. Supp. 2d 714, 721 (S.D. Tex. 2008) ("consumers were forced to expend substantial time and effort to obtain refunds and cancellation of the service"). Both cases also involved additional, substantial harm (such as "millions of dollars billed" to consumers), and neither held that the government's investigation was itself sufficient harm.

As to credit reporting, the Bureau hypothesizes potential effects on a consumer's "credit profile" but does not explain what a "credit profile" is or how it can be affected when enrollment in Early Access and overdraft protection is not reported to consumer reporting agencies. *See* Opp. at 14; Mem. at 12. For online banking, the Bureau points to disclosures by the Bank, not contained in the Complaint, discussing the general risks of *using* (not enrolling in) online banking. *See* Opp. at 16. The disclosures are irrelevant: the Bureau's claim is that Fifth Third *enrolled* consumers in online banking without authorization—not that online banking was used without authorization. In any event, these general disclaimers regarding hypothetical events do not establish any likelihood of future harm, let alone harm that is "certainly impending." *Buchholz*, 946 F.3d at 865 (citation omitted); *see Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) (risk of future identify theft insufficient to support cause of action); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (allegations insufficient to plead an

unauthorized attempt to open a bank account because there was no actual loss, only "[t]he mere danger of future harm, unaccompanied by present damage") (citation omitted). And, of course, the Bureau cannot satisfy the injury-in-fact requirement with new allegations absent from its Amended Complaint. *See, e.g., Pope v. Kroger Co.*, 2020 U.S. Dist. LEXIS 108231, at *12 (S.D. Ohio June 19, 2020) (Cole, J.).

Although this failure to comply with the statutory requirements is dispositive (and avoids the constitutional standing question), the Bureau also lacks standing under Article III. In direct contravention of basic constitutional standing rules, the Bureau asserts that it can bring suit in federal court without alleging an injury to anyone at all. That is ironic coming from an agency with a mandate to protect consumers from financial harm, and it finds no support in the law. When the Supreme Court in *TransUnion LLC v. Ramirez* instructed that "Article III standing requires a concrete injury even in the context of a statutory violation," it did not limit its directive to private litigants. 141 S.Ct. 2190, 2205 (2021) (citations omitted). When the Court explained that "an injury in law is not an injury in fact," *id.*, it did not then add, "except when the federal government is involved." And for good reason: as the Court also explained in *TransUnion*, because "federal courts do not adjudicate hypothetical or abstract disputes," "under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *Id.* at 2203 (citation omitted). Counts 4 through 7 present no such controversy, even if it is the government that asserts them. *See United States v. Miami Univ.*, 294 F.3d 797, 807 (6th Cir. 2002) ("[A]gencies do not automatically have standing to sue for actions that frustrate the purposes of their statutes.") (citation omitted); *see also Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 547 (E.D. Mich. 2020) ("Plaintiff cannot show that Michigan First's alleged violation of the FCRA, alone, created an Article III injury-in-fact and her complaint must be dismissed.").

The Bureau's cases do not excuse this fatal defect. The Bureau cites *Stauffer v. Brooks Bros., Inc.* for the sweeping proposition that the federal government always has standing in civil suits whenever its laws are allegedly violated, irrespective of the law, the violation, or the absence of injury—a rule that would obliterate Article III's injury requirement altogether. 619 F.3d 1321, 1325 (Fed. Cir. 2010). *Stauffer* established no such rule, instead concluding that under a *qui tam* provision of a particular patent statute, Congress had "defined an injury in fact to the United States"—a targeted designation that not even the Bureau claims is present here. *Id.*

*Stauffer* (and the Bureau's other cases) involved violations that were alleged to actually cause concrete, identifiable harm. *See id.* at 1322 (defendant allegedly sold falsely marked bow ties); *Hy Cite Corp. v. Regal Ware, Inc.*, 2011 WL 1206768, at *1 (W.D. Wis. Mar. 15, 2011) (defendant allegedly "sold falsely marked salad cutters and made injurious statements about plaintiff's products"); *EEOC v. Crothall Servs. Grp., Inc.*, 2016 WL 3519710, at *3 (E.D. Pa. 2016) (defendant illegally used criminal history assessments to reject potential employees). The Bureau's cited authority therefore reaffirms that "[e]very plaintiff"—including the federal government—"must demonstrate standing, a jurisdictional prerequisite under Article III's case-or-controversy requirement." *Stauffer*, 619 F.3d at 1325.

**IV. THE CATCH-ALL CLAIMS ARE IMPROPER, VAGUE, AND DUPLICATIVE.**

The Opposition's additional discussion of Counts 1, 11, and 12 do not make them any less improper, vague, or duplicative. Opp. at 16–21. The Bureau misunderstands Fifth Third's argument on Counts 1 and 11. Counts 1 and 11 allege, respectively, that Fifth Third's "sales practices" writ large (i) were abusive because they led to the opening of unauthorized accounts and (ii) were unfair because the unauthorized accounts were likely to cause substantial injury to consumers. Compl. ¶¶ 129–144, 210–214. The Bureau appears to read Fifth Third's motion as calling for dismissal of these counts because they duplicate *each other*. Opp. at 19–20. That is

incorrect; they duplicate *other counts*. Specifically, Counts 2–7 also allege abusiveness and unfairness violations, but as to particular products and services—deposits (Count 2), credit cards (Count 3), online banking (Count 4), Early Access (Count 5), overdraft protection (Count 6), and a catch-all claim for "other consumer financial products" (Count 7)—that supposedly resulted from Fifth Third's "sales practices." Thus, Counts 1 and 11 on the one hand, and Counts 2–7 on the other, allege the same thing; the only difference is the level of generality or specificity in pleading. Such duplication warrants dismissal of the general claims. *See Gordon v. B. Braun Med. Inc.*, 2020 WL 1491378, at *5 (S.D. Ohio Mar. 27, 2020); *BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 2012 WL 3283397, at *3 (S.D. Ohio Aug. 10, 2012) (dismissing more general count as duplicative); *Fox v. Cty. of Saginaw*, 2021 WL 120855, at *8 (E.D. Mich. Jan. 13, 2021) ("there is no reason that duplicative claims should survive a motion to dismiss").

Count 12, too, is riddled with defects warranting dismissal. It asserts that Fifth Third should be independently liable under the "abusiveness" prong for not identifying and remediating additional consumers (whom the Bureau does not identify) who supposedly had unauthorized accounts or services opened. Compl. ¶¶ 217–18. In essence, the Bureau tries to punish Fifth Third for contesting its claims by manufacturing a separate claim, not for the underlying violation of allegedly opening unauthorized accounts, but for the supposed failure to identify and remediate those accounts. The Bureau cites no case supporting the proposition that an alleged failure to identify and remediate allegedly abusive conduct amounts to a standalone claim of abusiveness. If this were the law, then institutions would automatically face double-liability in any abusiveness suit by the CFPB: once for the substantive offense, and once more for litigating its scope. An institution's alleged failure to remediate the alleged substantive violation is not itself a separate substantive violation.

Given the nature of the allegations in this Count—an intentional decision not to make reasonable efforts to identify affected consumers, Compl. ¶ 219, and unspecified statements by unspecified speakers that misled consumers, *id.* ¶ 221, which plainly sound in fraud—Rule 9(b)'s heightened pleading requirements apply. The Bureau's out-of-circuit cases are distinguishable. Opp. at 18. For example, in *CFPB v. RD Legal Funding, LLC*, the defendants offered the much broader argument that "because the Government's claims are all premised on an alleged unified course of fraudulent conduct and the Complaint fails to distinguish between fraud and non-fraudulent claims, Rule 9(b)'s heightened pleading standard should apply to all of the claims alleged in the Complaint." 332 F. Supp. 3d 729, 767 (S.D.N.Y. 2018). That is not the case here, where Fifth Third asserts only that Rule 9(b) applies to one count that is squarely premised on the notion that Fifth Third supposedly misled consumers. Under Rule 9(b), the Complaint's allegations obviously fail for lack of particularity: No specific statement or conduct is identified.

Even if Rule 9(b) were inapplicable, Count 12 would still be impermissibly vague because, among other things, the Bureau does not articulate how the Bank was supposed to identify consumers who might have been affected by unauthorized account openings and how it supposedly misled its consumers. Fifth Third is closely supervised by regulators who conduct examinations and require supervisory corrections. An examination occurred in this case in June 2015, and Fifth Third remediated the small number of unauthorized accounts identified in that examination. The Bureau does not explain what else it claims in Count 12 Fifth Third should have done. What are the "reasonable methods" supposedly available to identify additional consumers affected by alleged unauthorized accounts? Compl. ¶ 217. What are the statements that Fifth Third made that supposedly caused reasonable consumers to believe that Fifth Third

had identified and remediated all consumers that it subjected to unauthorized financial products or services? Compl. ¶ 221. The Amended Complaint is silent on these points. In addition, the Bureau does not even attempt to explain how Fifth Third's alleged failure to identify and remediate actually satisfies the elements of abusiveness. All it does is make "[t]hreadbare recitals of the elements" of abusiveness "supported by mere conclusory statements," which is patently insufficient. *Straythorn v. Wheth Pharms., Inc.*, 737 F.3d 378, 400 (6th Cir. 2013) (citation omitted).

The Bureau's attempts to fill that void in its Opposition, Opp. at 18–19, are both improper and futile. The Bureau's "allegations . . . must be in [its] pleading itself and cannot be supplemented by a responsive brief." *Geiling v. Wirt Fin. Servs., Inc.*, 2014 WL 8473822, at *4, *27 (E.D. Mich. Dec. 31, 2014) (citation omitted), *report and recommendation adopted in part*, 2015 WL 1529866 (E.D. Mich. Mar. 31, 2015). But even if the Bureau's extra-pleading assertions were considered, Count 12 would still fail. The Bureau does not identify any statute or regulation that required Fifth Third to take these steps. This Count amounts to impermissible regulation by enforcement.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment on the pleadings dismissing claims that pre-date the July 21, 2011 Transfer Date; narrowing claims related to unauthorized credit card accounts (Counts 3, 8, 10, and 13) to post-October 7, 2015 conduct based on the statute of limitations; dismissing the TILA and FCRA claims as time-barred by the statute of limitations and, for FCRA, by the statute of repose (Counts 8, 10, and 13); dismissing Counts 4–7 for failing to plead an actual injury; dismissing Count 12 as non-cognizable and lacking plausibility or particularity; and dismissing Counts 1 and 11 as vague and duplicative.

Dated: August 16, 2021

Respectfully submitted,

/s/ Ryan Scarborough

WILLIAMS & CONNOLLY LLP
John K. Villa (*pro hac vice*)
Enu Mainigi (*pro hac vice*)
Ryan Scarborough (*pro hac vice*)
725 12th Street, N.W.
Washington, DC 20005
202-434-5000
jvilla@wc.com
emainigi@wc.com
rscarborough@wc.com

DINSMORE & SHOHL LLP
Laurie A. Witek (0083955)
Michael Ferrara (0097584)
Katherine Rasmussen (0093928)
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
513-977-8648
Laurie.Witek@Dinsmore.com
Michael.Ferrara@Dinsmore.com
Katherine.Rasmussen@Dinsmore.com

*Attorneys for Defendant Fifth Third Bank, N.A.*

**CERTIFICATE OF SERVICE**

I certify that the foregoing Reply Memorandum in Support of Defendant Fifth Third Bank's Motion for Judgment on the Pleadings was electronically filed with the Clerk of the Court by utilizing the CM/ECF System on August 16, 2021, which will provide electronic notification to all counsel of record.

/s/ Krysta K. Gumbiner