## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BUREAU OF CONSUMER
FINANCIAL PROTECTION,

        Plaintiff,               Case No. 1:21-cv-262
                                JUDGE DOUGLAS R. COLE

    v.

FIFTH THIRD BANK, N.A.,

        Defendant.

### OPINION AND ORDER

The Consumer Financial Protection Bureau (CFPB or the Bureau) believes that Fifth Third Bank, N.A. (Fifth Third or the Bank) has violated and continues to violate various consumer protection laws. The Bureau sued the Bank, and the Bank has now moved for judgment on the pleadings (the Motion). (Doc. 129). For the reasons discussed below, the Court **HOLDS** the Motion **IN ABEYANCE** in part, **GRANTS** it in part, and **DENIES** it in part. Specifically, the Court holds in abeyance the issue of whether the CFPB's funding mechanism violates the Appropriations Clause of the United States Constitution, as that issue is currently pending before the United States Supreme Court. The Court grants Fifth Third's Motion to the extent it argues the CFPB cannot pursue Consumer Financial Protection Act violations occurring prior to July 21, 2011. On all other grounds, the Court denies Fifth Third's Motion.

## BACKGROUND

When reviewing a motion for judgment on the pleadings, the Court accepts as true the well-pleaded factual allegations in the operative complaint, here the Amended Complaint (Doc. 73). *See Bullington v. Bedford Cnty.*, 905 F.3d 467, 469 (6th Cir. 2018). So, the Court's report of the background here largely relies on the allegations in the Amended Complaint, but with the caveat that they are just that—allegations.

Fifth Third Bank offers various financial products to its customers. The CFPB alleges that since at least 2010, the Bank has aggressively incentivized employees to get customers to use as many products as possible—for example, getting them to open new accounts or obtain new bank credit cards. (Doc. 73, #62–63). But employees sometimes fell short of their goals. So, Bank employees occasionally took matters into their own hands and allegedly opened accounts in customers' names or enrolled them in other financial products without their knowledge or consent. (*Id.* at #59). Specifically, the CFPB alleges Bank employees improperly "opened deposit accounts in consumers' names; transferred funds from consumers' existing accounts to new, improperly opened accounts; applied for and issued credit cards; enrolled consumers in online banking; opened lines of credit on consumers' accounts; and enrolled consumers in overdraft protection and other financial products." (*Id.* at #65).

That's not all. The Bureau further alleges that Bank employees:

> changed without consumer consent the types of accounts or services in which consumers were enrolled; made false representations about the terms and conditions of consumer-financial products or services to induce consumers to accept, change, or enroll in them; used or obtained consumers' credit reports without an authorized purpose; and, without

> consumer authorization, assigned personal-identification numbers or
> falsified consumer-contact information, including by creating email
> addresses or using inaccurate email addresses, in order to facilitate
> unauthorized enrollment of consumers.

(*Id.* at #66).

Fifth Third, for its part, concedes that a few bad actors opened unauthorized accounts in the past. But the Bank views these incidents as isolated instances by rogue employees that the Bank has long since addressed, and claims that there are no ongoing problems. (2d Am. Compl., Doc. 122, #1282–83). The CFPB disagrees. It says that these practices were—and remain—widespread at Fifth Third and that the Bank either knows of or consciously disregards their scope. (Doc. 79, #74). The CFPB also alleges Fifth Third failed to investigate and has taken insufficient steps to remedy the existing unauthorized accounts and products. (*Id.* at #74–78). Instead, the Bank relies on customer self-reporting—but even with such reporting, the Bank allegedly often fails to act on its customers' complaints. (*Id.* at #75–76).

For some time, the CFPB investigated the Bank's practices. During the investigation, the parties executed multiple agreements tolling the applicable statutes of limitations. (*See, e.g.*, Doc. 122-3). But, on March 9, 2020, the CFPB sued Fifth Third in the Northern District of Illinois. (Doc. 1). That court transferred the matter to the Southern District of Ohio on April 14, 2021. (Doc. 58). Now, in its Amended Complaint, the Bureau raises thirteen claims under various consumer protection statutes. This includes ten counts under the Consumer Financial Protection Act (CFPA) (Counts I–VII, XI–XIII), one count under the Fair Credit Reporting Act (FCRA) (Count X), one count under the Truth in Lending Act (TILA)

(Count VIII), and a final count under the Truth in Savings Act (TISA) (Count IX). (Doc. 73, #80–97). But the Amended Complaint contains no allegations pertaining to when the Bureau discovered Fifth Third's alleged misdeeds.

Fifth Third and the CFPB both moved for partial judgment on the pleadings. Fifth Third argued that many of the alleged violations occurred outside the applicable statutory time limits, failed to state an injury in fact, failed to state a claim upon which relief could be granted, and were duplicative. (Doc. 85-1). The Bureau moved for judgment only as to Count XII. (Doc. 89-1).

While those motions were pending, the Fifth Circuit issued its decision in *Community Financial Services Ass'n of America Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022). There, the circuit court held that the CFPB's funding mechanism violates the Appropriations Clause. *Id.* at 623. Based on that decision, Fifth Third moved to amend its answer to plead a defense along those same lines. (Doc. 113). The Court granted that motion. (Doc. 118). But in allowing Fifth Third to amend, the Court also mooted the pending Motions for Judgment on the Pleadings, which had referenced a now-inoperative answer. (*Id.*).

Fifth Third submitted its Second Amended Answer. (Doc. 122). Alongside that, the Bank also submitted exhibits relevant to this Opinion. First, Fifth Third attached a June 3, 2015, "Weekly Update" message ██████████████████████ ████████████████████████████████████████████████ ████████████████ (Doc. 122-1). This informal message is unsigned and does not appear on letterhead. Additionally, it bears no indicia of having come from the CFPB

4

other than the Bureau's name in small print at the top. Perhaps for that reason, the Bank also submitted an affidavit ████████████████████████████ ████████████████████████ (Doc. 124). But Fifth Third filed this affidavit separately and did not attach it to the Second Amended Answer. Finally, the Bank attached to its Second Amended Answer the various agreements tolling the time for the CFPB to bring suit. (*See, e.g.*, Doc. 122-3).

After amending its answer, Fifth Third again moved for judgment on the pleadings. (Doc. 129). (The Bureau did not renew its Motion for Judgment on the Pleadings.) The Bank repeated its prior arguments, but also added an argument that the CFPB's funding mechanism violated the Appropriations Clause, which means it cannot proceed with this suit. But shortly thereafter, the United States Supreme Court granted certiorari to review the Fifth Circuit's decision finding that the CFPB's funding mechanism was unconstitutional. *CFPB v. Cmty. Fin. Servs. Ass'n of Am. Ltd.*, 143 S. Ct. 978 (2023). At a subsequent hearing on the Motion, the Court advised the parties that it intended to hold that issue in abeyance until the Supreme Court issues its decision. (Doc. 144, #2099–100).

Beyond that issue, the Motion is now ripe.

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed like a motion to dismiss under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). The short, plain statement of the claim must offer more than mere "labels and conclusions." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Rather, to survive a motion for judgment on the pleadings or a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). In making that determination, though, the Court must "construe the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

## LAW AND ANALYSIS

Fifth Third's Motion raises six main challenges: that (1) the CFPB's funding mechanism is unconstitutional; (2) some of the CFPA, FCRA, and TILA allegations are time barred; (3) the CFPB cannot pursue claims based on allegations related to Bank conduct before the Bureau received its authority on July 21, 2011; (4) Counts IV through VII fail to plead an injury in fact sufficient to grant the CFPB standing; (5) Count XII fails to state a plausible claim; and (6) Counts I and XI are duplicative of other claims. (Doc. 131). As noted, the Court previously advised the parties that it intends to hold the constitutional challenge in abeyance while the Supreme Court considers the same question. (Doc. 144, #2099–100). Thus, the Court effectively faces five challenges. On those five issues, the Court agrees with the Bank that the CFPB cannot pursue any claims under the CFPA for alleged violations occurring prior to

6

July 21, 2011. But as to any other statutory violations occurring before July 21, 2011, and as to the remaining issues, the Court finds the CFPB has the better of the arguments.

**A.  The Court Cannot Say Yet Whether The Various Applicable Statutes of Limitations Bar Any Of The CFPB's Allegations, But It Can Say FCRA's Statute Of Repose Does Not.**

Fifth Third argues that statutory time limits circumscribe many of the CFPB's allegations. Namely, the Bank points to the CFPA's, FCRA's, and TILA's statutes of limitations and FCRA's statute of repose. (Doc. 131, #1461–63). In so arguing, the Bank seeks to limit the violations the Bureau can pursue.

Start with the statutes of limitations. In seeking to dismiss the CFPB's claims based on their statutes of limitations, Fifth Third faces a daunting task. Generally, dismissal on limitations grounds is appropriate only "if the allegations in the [Amended Complaint] affirmatively show that the claim is time-barred." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (citation and internal quotation marks omitted). Moreover, "the statute of limitations is an affirmative defense, and it is the defendant's burden to show that the statute of limitations has run." *Id.* (cleaned up). In determining whether the defendant has met that burden, the Court generally must consider: (i) the applicable statute of limitations period, (ii) when the action accrued (and thus set that period in motion), and (iii) whether any tolling period exists. *See Hollis v. Erdos*, 480 F. Supp. 3d 823, 829–30 (S.D. Ohio 2020).

As to the second element, the statute of limitations generally "starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *McNamara v. City of Rittman*, 473 F.3d 633, 639 (6th Cir. 2007) (quoting

*Kuhnle Bros. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). In short, to dismiss a claim at the pleadings stage based on a statute of limitations defense, there must be affirmative allegations showing when the CFPB knew or had reason to know of the Bank's alleged violation in the Complaint.

"In ruling on a motion for judgment on the pleadings, however, the district court may not consider material outside of the pleadings unless the court converts the motion into one for summary judgment." *Hickman v. Laskodi*, 45 F. App'x 451, 454 (6th Cir. 2002) (citing Fed. R. Civ. P. 12(c)). And here, no party has requested that the Court convert Fifth Third's Motion into one for summary judgment. Thus, the Court will evaluate the Motion only as one for judgment on the pleadings.

When ruling on a Rule 12(c) motion, courts generally consider the complaint, the answer, and those written instruments attached to the complaint or answer as exhibits. *United States v. Bd. of Cnty. Comm'rs*, Nos. 1:02-cv-107, 1:09-cv-29, 2010 WL 200326, at *2 (S.D. Ohio Jan. 14, 2010); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). A written instrument is a record falling within a narrowly defined class of legally significant documents "on which a party's action or defense is based." *Copeland v. Aerisyn, LLC*, No. 1:10-cv-78, 2011 WL 2181497, at *1 (E.D. Tenn. June 3, 2011). Such writings include contracts, insurance policies, security agreements, deeds, wills, notes, bonds, and leases. *See id.*; *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, No. 3:18-cv-1368, 2021 WL 2400301, at *2 (M.D. Tenn. June 11, 2021). These documents often create or define legal rights or obligations, or define or reflect a

8

change in legal relationships. *Aaron v. Medtronic, Inc.*, No. 1:13-cv-301, 2013 WL 5177168, at *2 (S.D. Ohio Sept. 12, 2013).

A written instrument (which is part of the pleadings) can be distinguished from a narrative document that describes a party's version of the events (which is not). *Id.* The latter category includes documents like affidavits and deposition transcripts. *See In re Empyrean Biosciences, Inc. Sec. Litig.*, 219 F.R.D. 408, 413 (N.D. Ohio 2003).

The Amended Complaint contains no allegations from which the Court can infer when the Bureau knew or had reason to know of the Bank's alleged violations. Instead, Fifth Third mounts its defense using two exhibits it filed alongside its Second Amended Answer. First, Fifth Third points to an unsigned June 3, 2015, Weekly Update ██████████████████████████████████████ ████████ (Doc. 122-1). Second, it cites an affidavit ███████████████████████ ████████████████████████████████████████████████ ██████████████ (Doc. 124). Fifth Third says both are written instruments that the Court should consider at this stage. And from these exhibits, Fifth Third argues the CFPB knew or had reason to know of Fifth Third's alleged violations at least as early as June 3, 2015.

The Court declines to credit these attachments at this stage of the litigation. The affidavit is a non-starter. First, the Bank did not formally attach the affidavit to its Second Amended Answer but filed it separately. However, even if it had, the affidavit is not akin to a contract, deed, or insurance policy. Rather, it puts forth the

Bank's version of events—a factual recitation the CFPB has not yet had the opportunity to rebut.

The Weekly Update is perhaps a closer call. On one hand, the exhibit speaks for itself and thus does not necessarily require further explanation. And its contents suggest CFPB's knowledge, thereby providing the basis for Fifth Third's statute of limitations defense. Yet, on the other hand, unlike a contract or deed, it does not appear to be a formal written instrument. It details only ██████████████ and bears no name or signature. Additionally, also unlike a contract, deed, or other formal instrument, the Weekly Update did not purport to alter the legal rights and obligations or legal relationship between the parties.

On balance, the Court concludes the Weekly Update does not qualify as a written instrument that the Court can consider at this stage for three reasons. First, pleadings are intended to be short, plain statements that simply put both sides on fair notice of the claims and defenses at issue. That understanding favors a narrower concept of which attachments merge with, and thus become part of, the pleadings themselves. Second, traditional written instruments typically fall within a clear set of legally cognizable documents. Indeed, written instruments often have self-verifying qualities and are not normally subject to disputes about authenticity. Yet here, the Weekly Update contains few verifying attributes—thus the need for the Bank's (excluded) affidavit. And third, a narrower definition of written instruments protects the opposing party from unfair surprise. After all, a plaintiff has no

opportunity to supplement his or her complaint with rebuttal evidence when resisting a Rule 12(c) motion.

Fifth Third responds that other district courts have considered similar attachments when ruling on Rule 12(c) motions. (Reply, Doc. 136, #1644). For example, Fifth Third notes that the Northern District of Ohio mentioned an EEOC dismissal letter attached to a defendant's Rule 12(c) motion despite the plaintiff's failure to attach the letter to his complaint. *Dundee v. Univ. Hosps. Corp.*, No. 1:19-cv-1141, 2019 WL 7195317, at *6 (N.D. Ohio Dec. 3, 2019), *report and recommendation adopted*, 2019 WL 7194657 (N.D. Ohio Dec. 26, 2019). Fifth Third argues that *Dundee* suggests that the Court may consider exhibits other than formal legal documents. (Doc. 136, #1644).

The Court finds *Dundee* unhelpful to Fifth Third's argument for three reasons. First, while the Magistrate Judge in *Dundee mentioned* the letter, he expressly rejected *relying* on it to resolve the motion. 2019 WL 7195317, at *6 ("For purposes of the Rule 12(c) analysis, the Court must take as true Dundee's allegation that the Dismissal letter was sent on August 13, 2018."). Second, even were that not so, a formal EEOC dismissal letter far more closely resembles the written instruments contemplated by Rule 10(c). Such letters will often appear on formal letterhead, contain legal language, and be signed by the issuing party. The Weekly Update lacks these attributes. Third, the Bureau makes no mention of the Weekly Update in the Amended Complaint, and Fifth Third mentions it only one time in passing in its Second Amended Answer (Doc. 122, #1302). Even then, the Second Amended Answer

11

does not cite the Weekly Update in connection with its assertion of a statute of limitations defense. (*Id*. at #1340–41).

Fifth Third also emphasizes *Barnard v. Lackawanna County*, 194 F. Supp. 3d 337 (M.D. Pa. 2016). There, the Middle District of Pennsylvania considered five exhibits attached to the defendant's answer when evaluating a Rule 12(c) motion. *Id.* at 340–42. The exhibits included a letter providing plaintiff with notice of a due process hearing, a letter providing notice of the plaintiff's suspension, a paystub detailing employee payment data, a grievance form submitted by the plaintiff, and a collective bargaining agreement. *Id.* The *Barnard* court found that each exhibit related to and helped form the basis for the plaintiff's cause of action. *Id.* Fifth Third argues that the Weekly Update resembles these five documents from *Barnard*, and so the Court should consider the message here.

The Court is not so sure. To start, the Court does not have the *Barnard* documents to adequately compare them to the Weekly Update. More importantly, though, the *Barnard* documents all seem more akin to written instruments than the Weekly Update. For example, a due process letter formally notifies the plaintiff of his procedural rights, and a suspension letter informs the plaintiff of a change in legal status. Contrast that with the Weekly Update, which does not purport to explain any legal rights or alter any legal relationships.

Putting all that together, the Court concludes it cannot consider the Weekly Update or the affidavit in ruling on Fifth Third's Motion for Judgment on the Pleadings. Without these exhibits and their allegations, the Court is left with the

Amended Complaint and Second Amended Answer, along with the parties' tolling agreements, which do not factor into the Court's conclusion here. Nothing contained in the Amended Complaint or the Second Amended Answer allows the Court to divine with any confidence when the Bureau learned or had reason to learn of Fifth Third's alleged consumer protection violations. Absent those allegations, the Court cannot dismiss the Bureau's claims based on the statute of limitations at this stage of the litigation.

That leaves FCRA's statute of repose. FCRA requires that "[a]n action to enforce any liability created under this subchapter may be brought" no later than "5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.[1] Based on that language, coupled with the fact that the Bureau initially filed suit on March 9, 2020, Fifth Third argues that the Bureau cannot pursue FCRA violations occurring before March 9, 2015. (Doc. 131, #1463).

"Statutes of repose effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (quoting 54 C.J.S., Limitations of Actions § 7, p. 24 (2010)). Like a statute of limitations, a statute of repose provides a set period beyond

---

[1] The Court recognizes that because the compilations of FCRA and the CFPA found in the United States Code have yet to be enacted into positive law, the code compilations constitute only prima facie evidence of the laws; the provisions as compiled in the Statutes at Large control. *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) (citing 1 U.S.C. §§ 204(a), 112). That said, in the interest of brevity and clarity, the Court will follow the standard practice in this opinion of citing to the United States Code, rather than the public laws themselves. *Safeco Ins. Co of Am. v. Burr*, 551 U.S. 47 (2007) (citing to Title 15 of the United States Code for provisions of FCRA); *Veard v. F&M Bank*, 704 F. App'x 469 (6th Cir. 2017) (citing to Title 12 of the United States Code for provisions of the CFPA).

which a plaintiff cannot sue. *Id.* Unlike the statute of limitations, though, a statute of repose does not relate to when the plaintiff discovered the claim, and a statute of repose typically cannot be tolled. *Id.* Thus, a defense based on a statute of repose can be resolved based on the pleadings more easily.

The CFPB argues that FCRA's statute of repose does not apply when the Bureau brings an action. (Opp'n, Doc. 135, #1581). Focusing on § 618's language, the Bureau argues that it is not enforcing "liability created under" the FCRA but rather liability created under 12 U.S.C. § 5565. That provision states that the Bureau may obtain "any appropriate legal or equitable relief" for violations of certain consumer protection laws, including FCRA. *Id.* Adding to that, the Bureau also points to 15 U.S.C. § 1681s(d). Section 1681s(d) notes that FCRA violations "shall be deemed to be a violation" of the CFPA "[f]or the purposes of the exercise by [the CFPB] . . . of its powers under [the CFPA]." To the CFPB, then, any FCRA claim it brings constitutes an administrative enforcement action under the CFPA that does not implicate FCRA's statute of repose.

Other district courts have considered a version of this argument before, but in a slightly different context.  More specifically, they have considered whether the TILA's statute of limitations applies when the CFPB brings an enforcement action under the TILA. Some saying no and others saying yes. *Compare CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39 (D. R.I. 2020) (not applying the TILA's statute of limitation), *and CFPB v. Ocwen Fin. Corp.*, No. 17-80495-civ, 2019 WL 13203853 (S.D. Fla. Sept. 5, 2019) (same), *with CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d

14

878 (S.D. Ind. 2015) (applying the TILA's statute of limitations). However, the cases are of limited usefulness because the courts that have agreed with the CFPB's argument here appear to have done so based on specific language from the TILA. In particular, the courts note that the TILA's statute of limitations applies to "individual" and "class action" lawsuits but not administrative enforcement actions. *See, e.g., Ocwen Fin. Corp.*, 2019 WL 13203853, at *28. FCRA, by contrast, does not draw those same distinctions.

But that still leaves what FCRA *does* say. Based on the relevant statutory language, the Court concludes that FCRA's statute of repose does not apply to actions the Bureau brings. Under § 1681p, FCRA's statute of repose applies to actions where FCRA creates the liability. True, in Count X, the CFPB asserts a claim under FCRA. But in doing so the CFPB does not stand in the shoes of a regular plaintiff. Rather, the Bureau proceeds in an administrative enforcement capacity. Therefore, the Court must look to 15 U.S.C. § 1681s, entitled "Administrative Enforcement." Subsection (b) of that provision states that "compliance with the requirements imposed under [FCRA] … shall be enforced under … subtitle E of the [CFPA], by the Bureau[.]" *Id.* § 1681s(b)(1)(H). Then, subsection (d) states:

> For the purpose of the exercise by any agency referred to in subsection (b) of its powers under any Act referred to in that subsection, a violation of any requirement imposed under this subchapter shall be deemed to be a violation of a requirement imposed under that Act.

*Id.* § 1681s(d). The "subtitle E" referred to above cross references in part 12 U.S.C § 5564. 12 U.S.C. §5564(a) grants the Bureau its litigation authority, while §5564(g) sets its general three-year statute of limitations. In short, the Court concludes that

15

the CFPB, when pursuing an administrative action under FCRA, is actually enforcing a violation of the CFPA and proceeding under subtitle E of Dodd-Frank, which means FCRA's statute of repose does not apply to Count X of the Amended Complaint.

It ultimately matters little whether that is so, though, because Count XIII covers the same conduct alleged in Count X. In Count XIII, the CFPB alleges the Bank violated 12 U.S.C. § 5536(a)(1)(A). That provision independently prohibits financial entities from violating other consumer financial laws, including FCRA. 12 U.S.C. § 5536(a)(1)(A). Thus, the CFPB has explicitly pleaded a violation of the CFPA itself, which is directed at the same underlying conduct that otherwise violates FCRA (and thus would be alleged in Count X of the Amended Complaint). Notably, the CFPA includes a statute of *limitations* for violations under the Act. 12 U.S.C. § 5564(g). But it neither includes a statute of repose nor expressly incorporates FRCA's statute of repose.

As a result, the Court finds that FCRA's statute of repose does not apply to Count XIII. And because that count seeks to penalize Fifth Third for the same conduct FCRA would otherwise penalize under Count X, the CFPB can pursue those violations without reference to FCRA's statute of repose. For both these reasons, the Court concludes that FCRA's statute of repose does not limit the CFPB's temporal reach in pursuing its action here.

## B.   The CFPB Can Enforce Pre-Transfer Date TILA, FCRA, And TISA Claims, But Not Pre-Transfer Date CFPA Claims.

Fifth Third next argues that the CFPB cannot pursue any violations that occurred before the CFPB received its authority on July 21, 2011. On that day,

16

authority transferred from multiple federal agencies to the CFPB to enforce various consumer protection laws, including the CFPA. Designated Transfer Date, 75 Fed. Reg. 57,252, 57,253 (Sept. 20, 2010). Fifth Third argues that allowing the CFPB to pursue pre-transfer date violations contravenes the traditional presumption against retroactivity.

"[I]ndividuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Therefore, "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Id.* (citation omitted). A statute will have retroactive effects where the statute:

> attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. ... [F]amiliar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Id.* at 270. Courts thus presume statutes do not have retroactive effect unless Congress clearly manifests that intent. *Hughes Aircraft Co. v. United States* ex rel. *Schumer*, 520 U.S. 939, 946 (1997).

The problem with Fifth Third's retroactivity argument is that the CFPB is not applying the TILA, FCRA, or TISA retroactively—at least not in the traditional sense. The Bureau is not seeking to penalize conduct that had previously been legal under those statutes. Rather, Fifth Third complains that the CFPB is applying its newly granted *enforcement power*, which occurred on July 21, 2011, to reach conduct that occurred before that date. But so what? What the law requires does not change simply

17

because a different entity is enforcing those obligations. Under the TILA, FCRA, or TISA, Fifth Third had a full "opportunity to know what the law is and to conform their conduct accordingly." *Landgraf*, 511 U.S. at 265. Thus, the CFPB enforcing those statutes now presents no retroactivity problem. *See CFPB v. NDG Fin. Corp.*, No. 15-cv-5211, 2016 WL 7188792, at *20 (S.D.N.Y Dec. 2, 2016) (permitting the CFPB to enforce FTC pre-transfer date regulations against pre-transfer date conduct).

Case law supports that conclusion. In the first few years of its existence, the Bureau brought enforcement actions for conduct occurring before the transfer date and courts did not spot any retroactivity concerns. *E.g.*, *id.* ("Count VII seeks relief for violations of the Credit Practices Rule, which went into effect in 1985, … and therefore it … [is] not being applied retroactively."); *see also CFPB v. Borders & Borders*, *PLC*, No. 3:13-cv-1047, 2015 WL 631196, at *1–2 (W.D. Ky. Feb. 12, 2015) (CFPB alleging Real Estate Settlement Procedures Act violations from 2006 to 2011).

Fifth Third responds that the CFPB has, in other cases, limited its recovery to violations starting on the transfer date. *E.g.*, *CFPB v. Future Income Payments, LLC*, No. CV 8:19-2950, 2020 WL 6162947, at *8 (D.S.C. May 21, 2020) (limiting penalty calculation to the post-Transfer Date period). That may well be. But that the CFPB on occasion has not *elected* to prosecute pre-transfer date violations of existing laws does little to show the CFPB *cannot* do so. The Court finds that the CFPB can seek

to enforce the TILA, FCRA, and TISA against conduct that occurred before the transfer date.[2]

The analysis is a little different, though, with respect to what the Court will call the pure CFPA claims.[3] That is, the CFPA itself established *new* causes of action for unfair and abusive practices and authorized the CFPB to enforce those provisions. 12 U.S.C. §§ 5536(a)(1)(B), 5564(a). Before the transfer date, these prohibitions did not exist. 75 Fed. Reg. at 57,253. Accordingly, claims based on these newly created obligations could raise retroactivity concerns if applied to pre-July 21, 2011, conduct.

In other words, the CFPA's unfairness and abusiveness provisions attach novel and significant legal consequences to conduct not previously penalized under the law. Regulated entitles like Fifth Third lacked adequate notice that their pre-transfer date conduct could be penalized under these provisions, which did not exist at the time. Further, Congress did not clearly state that these claims could apply to conduct before the CFPA's enactment. Absent that evidence, the Bureau cannot apply its CFPA-specific claims retroactively to penalize activity before July 21, 2011. *E.g.*, *CFPB. v. TCF Nat'l Bank*, Civ. No. 17-166, 2017 WL 6211033, at *3 (D. Minn. Sept. 8, 2017) ("[T]he Bureau cannot assert claims under the statute arising before July 21, 2011, the CFPA's effective date.").

---

[2] Picking up on the discussion regarding FCRA's statute of repose in the previous section, the CFPB can also enforce these statutory obligations as indirect CFPA violations, which means that any generic statutes of repose in those FCRA sections do not bar the CFPB from directing its enforcement powers at pre-transfer date conduct.

[3] By "pure CFPA claims," the Court refers to violations of obligations that the CFPA itself creates, rather than violations of other statutes that the CFPB may choose to enforce as CFPA violations.

The CFPB does not meaningfully resist that result. It merely responds that whether it can apply the CFPA retroactively is irrelevant because that determination will not alter the scope of discovery. (Doc. 135, #1583). The Court takes no position on whether this finding will alter discovery. Indeed, as described above, the Bureau may pursue other pre-transfer date claims anyway. But the scope of discovery differs from whether the CFPB may pursue and recover for pre-transfer date pure CFPA violations. And on the latter question, the Court finds the CFPB cannot.

## C. The CFPB Need Not Plead An Injury In Fact To Have Standing.

Fifth Third next argues that Counts IV through VII cannot proceed because the CFPB lacks standing to bring those claims. (Doc. 131, #1467). Specifically, Fifth Third argues that the Bureau has not alleged a sufficient injury in fact to have standing. (*Id.*). In the Bank's telling, the Bureau must identify a real-world customer injury for each claim to proceed. (*Id.*).

The Bank's standing argument starts on sound legal footing. If a plaintiff lacks standing, then the Court lacks subject-matter jurisdiction. *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001); Fed. R. Civ. P. 12(b)(1). Normally, to establish standing, a plaintiff must make three showings: "(1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). And the injury identified to satisfy prong one must be both concrete and particularized. *Lujan,* 504 U.S. at 560. Moreover, it must have already

occurred, currently be occurring, or at least be imminent. *Savage v. Gee*, 665 F.3d 732, 740–41 (6th Cir. 2012).

All that said, the CFPB is no ordinary plaintiff. Federal agencies need not follow the traditional formulation to claim standing to sue in federal court. That is because "[a] violation of [a federal] statute inherently constitutes an injury to the United States." *Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010); *see also Vt. Agency of Nat. Res. v. United States* ex rel. *Stevens*, 529 U.S. 765, 771–73 (2000). Unsurprisingly, then, "[f]ederal courts regularly adjudicate government enforcement actions that would lack 'injury in fact' if brought by private plaintiffs." Trevor W. Morrison, *Private Attorneys General and the First Amendment*, 103 MICH. L. REV. 589, 627 (2005). This approach makes some sense. After all, the federal government can enforce its own laws *before* a violation causes further harm. Like a police officer ticketing a speeding driver before a crash, the government can enforce laws to *prevent* harm. Indeed, much of the modern regulatory state relies on this premise.

What, then, must a federal agency show to have standing? Generally, it is enough if Congress has authorized suit through statute.[4] *See United States v. Miami*

---

[4] Courts have, at times, blessed federal executive standing even where no statute authorized the suit. *In re Debs*, 158 U.S. 564, 581–82 (1895) (finding the government could sue to break up the Pullman Strike, which was interfering with interstate commerce, even without a statute authorizing the suit); *United States v. U.S. Klans, Knights, of Ku Klux Klan, Inc.*, 194 F. Supp. 897, 902–03 (M.D. Ala. 1961) (permitting the United States to sue to enjoin the KKK from conspiring to interfere with interstate commerce by acts of violence and intimidation in order to protect the civil rights of minorities). *But see New York Times Co. v. United States*, 403 U.S. 713, 718 (1971) (Black, J., concurring) (casting doubt on executive standing without a congressional authorization); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635–

*Univ.*, 294 F.3d 797, 807–08 (6th Cir. 2002); *United States v. City of Parma*, 661 F.2d 562, 572 (6th Cir. 1981). Take the Sixth Circuit's discussion in *City of Parma*. There, the United States Attorney General believed the city had engaged in a pattern or practice of violating the Fair Housing Act. *Id.* at 565. The Attorney General sued. *Id.* The city responded that the Attorney General lacked standing to bring suit in federal court to enforce the Act. *Id.* at 572. But the Sixth Circuit brushed aside this "difficult to understand" argument because, in part, "the Act clearly authorizes the Attorney General to sue." *Id.* Thus, the Sixth Circuit found it almost self-evident that a federal officer charged with enforcement authority can sue in federal court when he is exercising that authority.

Here, Congress expressly authorized the CFPB to enforce the CFPA and other consumer protection laws in federal court. 12 U.S.C. § 5564(a). And the Bureau is proceeding under that authority to prosecute this suit. (Doc. 73, #61). Thus, the Bureau has standing to sue in this Court, even without showing an actual or imminent injury to a member of the public.

Fifth Third resists this outcome, arguing that even where Congress authorizes suit, the United States still must always show a concrete and particularized injury to *someone*. (Doc. 136, #1653–54). But if that were so, surely Fifth Third could provide some examples. The Bank doesn't. Indeed, Fifth Third has not identified a *single* case in which a court has adopted its theory. This Court also cannot locate a case in which a court dismissed a suit brought by the United States or a federal agency for failure

---

38 (Jackson, J., concurring) (characterizing the President's authority to act under Article II as weaker without congressional authorization).

to show an injury in fact. *See Hy Cite Corp. v. Regal Ware, Inc.*, No. 10-cv-168, 2011 WL 1206768, at *3 (W.D. Wis. Mar. 15, 2011) ("[I]t is unlikely the government has ever been denied standing to enforce its own laws.").

If anything, courts have allowed executive enforcement actions to proceed *even absent* an authorizing statute. *See In re Debs*, 158 U.S. 564, 581–82 (1895) (allowing the United States to protect the flow of interstate commerce even though no statute authorized the suit). Where an authorizing statute *does* exist, as is the case here, courts have not dithered on the question of standing. *E.g.*, *City of Parma*, 661 F.2d at 572. This Court will not either.

Nor can Fifth Third overcome that problem by claiming that the CFPB is wrong about what constitutes a consumer protection violation and, in particular, that the activities the CFPB attacks here cannot amount to such violations as the activities did not harm any consumers. (Doc. 135, #22–25). Whether Fifth Third's activities in fact violated the various statutes, as the CFPB alleges and Fifth Third denies, is a *merits* question—not a *standing* question. Indeed, if the lack of a viable claim presented a standing issue, then every successful Rule 12(b)(6) motion would presumably be a jurisdictional challenge under Rule 12(b)(1) instead.

In short, the CFPB has standing to pursue this action.

## D.    Count XII Does Not Fail To State A Claim.

Fifth Third next contends Count XII of the Amended Complaint fails to state a claim upon which relief can be granted. The CFPB presents Count XII as an abusiveness claim and labels it "Failure to Identify and Remediate Affected

Consumers." (Doc. 73, #95). The count alleges that Fifth Third "is aware of reasonable methods available to it to identify" customers for whom Fifth Third's employees set up unauthorized accounts. (*Id.*). Despite this, the Bureau alleges that the Bank refuses to employ those methods. (*Id.*). Additionally, Fifth Third allegedly "[c]ompound[ed] the harm to consumers" when it "made statements to [them] that could cause reasonable consumers to believe that Fifth Third acts in their interests and has identified and remediated all consumers that it subjected to unauthorized financial products or services." (*Id.* at #96).

The Bank lodges three attacks on Count XII. First, Fifth Third says the Bureau has "the burden of establishing the existence of unauthorized accounts … and cannot shift that burden to Fifth Third." (Doc. 131, #1470–71). Second, the Bank argues that this count "sounds in fraud" and so must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. (*Id.* at #1471). Third, Fifth Third argues that Count XII fails even under Federal Rule of Civil Procedure 8's pleading standards because the Bureau did not articulate what reasonable efforts the Bank should have taken to remedy the unauthorized accounts. (*Id.* at #1471–72). The Court finds each challenge unavailing.

The first argument stumbles out of the gate. Sure, the CFPB has the ultimate burden to prove its claims. But the CFPB need not "prove" anything in its Amended Complaint. Rather, the Bureau need only allege facts that, when drawing all reasonable inferences in its favor, sufficiently state a plausible claim. *See Bullington*, 905 F.3d at 469. Here, the Court finds that the CFPB has plausibly alleged facts

showing that Fifth Third "engage[d] in a[] … abusive act or practice" by "tak[ing] unreasonable advantage of … the inability of the [Bank's customers] to protect the[ir] interests … in … using a consumer financial product or service."[5] 12 U.S.C. §§ 5531(d)(2)(B), 5536(a)(1)(B). If Fifth Third meant to say that the Bureau's allegations fail as a matter of law, the Bank has not articulated any meaningful argument along those lines.

Relatedly, the Court does not find Count XII deficient for failing to articulate the "reasonable efforts" the Bank should have taken. Count XII need only provide enough specific, non-conclusory allegations to state a facially plausible claim for relief. As discussed above, the Court finds that the CFPB did so in Count XII and the factual background section of the Amended Complaint. The Bank can explore those alleged "reasonable efforts" further in discovery. If the Bureau's answers during discovery are unsatisfactory, the Bank can then move for summary judgment. However, the Court finds that the Bureau has done enough for purposes of the Amended Complaint's ability to survive the motion for judgment on the pleadings.

Finally, the Court finds that Rule 9(b) does not apply to Count XII. When a claim alleges fraud or mistake, a plaintiff must plead the elements with particularity. Fed. R. Civ. P. 9(b). The Sixth Circuit has applied Rule 9(b) to other federal causes of action, such as the Securities Act, where the claim's allegations sound in fraud. *Ind.*

---

[5] As noted, the Court takes no position at this time as to whether Fifth Third has indeed committed an abusiveness violation. Instead, the Court merely notes that the CFPB has plausibly alleged facts that could meet the statute's definition of abusive practices. But the Bank may develop the argument in future filings that its conduct does not meet the statutory definition.

*State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009) (holding that when "§ 11 claims [under the Securities Act] ... sound in fraud, Rule 9(b) must apply" even though § 11 does not normally constitute a fraud action).

That said, whether Rule 9(b) similarly applies to CFPA claims that sound in fraud appears to be a matter of first impression in this circuit. Indeed some courts question whether Rule 9(b) *ever* applies to CFPA claims, even those that sound in fraud. *E.g., CFPB v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1372 (N.D. Ga. 2015); *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 17-80495-CIV, 2019 WL 13203853, at *14 (S.D. Fla. Sept. 5, 2019), *adhered to on denial of reconsideration*, No. 17-80495-CIV, 2019 WL 13211630 (S.D. Fla. Nov. 13, 2019). The *Hanna* court, for example, noted, a potential category mismatch because Rule 9(b) expressly applies to claims involving fraud or mistake, yet consumer protection claims typically do not require a showing of scienter. 114 F. Supp. 3d at 1372. *See also Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513–14 (6th Cir. 2007) (describing the FDCPA as a strict liability statute); *Smith v. Fidelity Consumer Disc. Co.*, 898 F.2d 896, 898 (3d Cir. 1990) (describing the TILA as a strict liability statute). And that court also observed that the remedial motivations underlying consumer protection laws counseled against restricting the CFPB's ability to enforce them. 114 F. Supp. 3d at 1373.

The Court need not decide, though, whether Rule 9(b) extends to fraud-based CFPA claims, as Count XII does not assert a claim deriving from a theory of fraud or

26

mistake. Instead, the Court reads this claim as focusing on the Bank's failure to remedy past wrongdoing. True, the claim also alleges that the Bank "compound[ed] the harm" to customers through statements Bank employees made to them. (*Id.* at #96). However, the extent of the customers' *harm* does not necessarily change the violation's core nature. Additionally, the crux of Count XII appears directed at the Bank's *inaction* (i.e., refusing to acknowledge and to remedy unauthorized accounts) rather than its actions or representations (i.e., assuring customers that the Bank looks out for their interests). Therefore, Count XII plausibly alleges an abusiveness claim.

### E. The Court Declines To Dismiss Counts I And XI As Duplicative Or Vague.

Finally, Fifth Third asks the Court to dismiss Counts I and XI as duplicative "catch-all claims that simply repackage Counts 2 through 7 with less specificity." (Doc. 131, #1472). Fifth Third also argues that the Court should dismiss these claims as unduly vague. (*Id.*).

Begin with the argument that Counts I and XI are duplicative. Courts have "the inherent power to manage [their] docket[s]." *In re Prevot*, 59 F.3d 556, 566 (6th Cir. 1995). This power includes the ability to dismiss duplicative claims raised in the same case. *See, e.g.*, *Gordon v. B. Braun Med. Inc.*, No. 1:19-cv-121, 2020 WL 1491378, at *5 (S.D. Ohio Mar. 27, 2020). Exercising that power falls within the court's sound discretion. *Grundy v. FCA US LLC*, No. 2:20-cv-11231, 2020 WL 7353515, at *3 (E.D. Mich. Dec. 15, 2020) ("Although courts may dismiss duplicative claims in the same case, they need not do so." (cleaned up)).

At the same time, the Federal Rules expressly permit a party to plead in the alternative. Fed. R. Civ. P. 8(d)(2). Accordingly, a court normally will not dismiss duplicative claims if they can reasonably be understood to plead alternative theories of relief. *E.g.*, *Kramer v. Am. Elec. Power Exec. Severance Plan*, No. 2:21-cv-5501, 2022 WL 1538638, at *2 (S.D. Ohio May 10, 2022); *see Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (noting that "[a]t the motion to dismiss stage ... it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative").

The Court declines to dismiss Counts I and XI as duplicative of Counts II through VII. Counts I and XI can be fairly read as pleading in the alternative because the various counts describe slightly different challenged conduct and proceed under slightly different statutory authority. By way of illustration, Count I alleges abusive sales practices and proceeds under 12 U.S.C. §§ 5531(d)(2)(A)–(C), 5536(a)(1)(B). (Doc. 73, #80–83). Count II, in contrast, alleges the creation of unauthorized deposit accounts and proceeds under 12 U.S.C. §§ 5531(c)(1), (d)(1), (d)(2)(B), 5536(a)(1)(B). (Doc. 73, #83–84). Therefore, the Court cannot say for certain at this early stage of the litigation that these counts are necessarily duplicative.

That leaves vagueness. This Court has dismissed "vague" claims in the past. *See, e.g.*, *White v. Erdos*, No. 1:19-cv-1007, 2020 WL 7698351, at *2 (S.D. Ohio Dec. 28, 2020) (dismissing a "vague" pro se prisoner's complaint), *report and recommendation adopted*, 2021 WL 516457 (S.D. Ohio Feb. 11, 2021). However, a modicum of vagueness, standing alone, does not warrant dismissal. Rather, dismissal

28

is warranted when allegations are so vague and conclusory that they fail to raise a plausible basis for a plaintiff's entitlement to relief. *See id.* Yet, here, Fifth Third has raised vagueness without meaningfully contending that the Bureau failed to state plausible claims under Counts I and XI. Accordingly, the Court refuses to dismiss these claims for supposed "vagueness."

In a last-ditch effort, Fifth Third complains that, during recent status conferences, the CFPB has improperly attempted to "recast" Counts I and XI in an effort to penalize conduct not described in the Amended Complaint. (Doc. 131, #1473). The Bank says that these new characterizations are time barred and otherwise unmeritorious. (*Id.*). But if the Bank believes the Bureau is now pursuing claims *beyond* the Amended Complaint, that is not an issue the Court can resolve on a Rule 12(c) motion. Rather, that issue should be explored in discovery and briefed in a subsequent motion for summary judgment.

## CONCLUSION

With respect to Fifth Third's Motion for Judgment on the Pleadings (Doc. 129), the Court **HOLDS** it **IN ABEYANCE** in part, **GRANTS** it in part, and **DENIES** it in part. The Court holds in abeyance its decision on the issue whether the CFPB's funding mechanism violates the Appropriations Clause of the United States Constitution. Fifth Third shall submit notice to the Court once it believes this issue is ripe for a decision. The Court **GRANTS** Fifth Third's Motion to the extent it argues that the CFPB cannot pursue Consumer Financial Protection Act unfair and abusive practices violations occurring prior to July 21, 2011. On all other grounds, though,

the Court **DENIES** Fifth Third's Motion. Separately, because this Opinion references documents that the parties filed under seal, the Court **ORDERS** that this Opinion shall be **TEMPORARILY SEALED** on the Court's docket. The Court **ORDERS** that, **on or before October 6, 2023**, the parties shall each file a brief on the sealed docket explaining which portions of this Opinion, if any, warrant a permanent seal under the standards set forth in *Shane Group* and its progeny.

      **SO ORDERED.**

September 26, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

30